UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEVIN POLLACK,                    *     Case No. 23-CV-02376(LKE)
                                  *
                                  *     Brooklyn, New York
                                  *     March 6, 2025
        v.                        *
                                  *
JODIE GORDON,                     *
                                  *
            Defendant.            *
                                  *
  *   *   *   *   *   *   *   *   *   *   *   *   *   *

       TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
         BEFORE THE HONORABLE LARA K. ESHKENAZI
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          BRIAN LEHMAN, ESQ.
                            Kasell Law Firm
                            1038 Jackson Ave., Suite #4
                            Long Island City, NY  11101


For the Defendant:          MARIA PATELIS, ESQ.
                            79 Tompkins Circle
                            Staten Island, NY  10301




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**Shelton, CT 06484 (203)732-6461**

2

```
 1              (Proceedings commenced at 2:05 p.m.)

 2              THE CLERK:  Motion hearing 23-CV-2376.  Can

 3    everyone state their appearance for the record?

 4              MR. LEHMAN:  Brian Lehman for the plaintiffs.

 5              THE COURT:  Good afternoon.

 6              MS. PATELIS:  Maria Patelis on behalf of the

 7    defendants.  Good afternoon, Your Honor.

 8              THE COURT:  Good afternoon.  All right.  So my

 9    understanding is the dispute here is where to conduct

10    plaintiff's deposition.  The defendants seek to do it in

11    person and plaintiffs say that he's currently living not

12    actually in Florida but overseas.

13              MR. LEHMAN:  I see.I promised I'd mediate for him.

14    I'll turn it off now.

15         (Pause.)

16              MR. LEHMAN:  It's off.

17              THE COURT:  Okay.  Normally this is not something

18    the Court needs to decide.  Normally the parties would be

19    able to work this out.  I'll start by saying there is a

20    presumption in the EDNY to allow remote depositions unless

21    there is some reason not to, but I will hear, starting with

22    defendant, as to why this needs to be an in-person

23    deposition.

24              MS. PATELIS:  Do I need to stand, Your Honor?

25              THE COURT:  No, you don't.
```

3

1      MS. PATELIS:  Well, that's the very reason Judge

2   Bulsara brought us here on November 19th.  Plaintiff and I

3   are not able to communicate or agree to deadlines or

4   professional courtesies or providing documents.  So we have

5   issues between the parties.

6      I'm asking the Court for the in-person deposition

7   of the plaintiff because -- I'm not -- he is a resident of

8   Florida, but he filed suit in New York.  I have a voluminous

9   amount of documents that I need to depose him on.  And given

10   the circumstances where I feel like if we do it by video, I'm

11   not going to have an adequate opportunity to really, you

12   know, get him to testify to issues without some kind of miss

13   -- something happening.

14      THE COURT:  I mean, I guess what I'm trying to get

15   at, I mean, one could say that about any video deposition.

16   Obviously, video depositions are very common now.  So is

17   there something really specific here that warrants -- I mean,

18   I understand the preference for in-person deposition.  I

19   prefer to conduct court proceedings in person.

20      MS. PATELIS:  Me, too.

21      THE COURT:  I don't like to do them on video --

22      MS. PATELIS:  Right.

23      THE COURT:  -- on the telephone, but when

24   necessary, I do.

25      So what I'm trying to understand is there something

4

1    really particular here that makes doing a remote deposition,

2    video deposition so difficult or impossible?  That's

3    different from other cases, because since the pandemic, quite

4    frankly, it's become more the norm to do it this way when

5    necessary.

6              MS. PATELIS:  Well, there's a long history in this

7    case and there's a lot of documents and I -- for me to

8    conduct a video for seven hours or maybe a couple of days --

9    they won't even give me a date yet --I would like to have

10   them here in person to go over the documents.  To have him

11   confer with his attorney.  To watch his demeanor.  To see

12   what is going on, that he's not being coached by anyone else.

13             I just feel like it -- given the discontent in this

14   case, and then it's been lingering since 2000.  There was --

15   like the client needs to come here so I could depose him

16   properly and confirm a date.  Even when we were last --

17             THE COURT:  Well, those are two separate issues.

18   Confirming a date, we can do that, but I'm still not -- I'm

19   going to be frank with you. I'm still not getting what you're

20   saying right now is something in every video deposition.  And

21   is he -- is it true that he's residing overseas right now,

22   not in Florida?

23             MS. PATELIS:  No.  He's not overseas.  He's

24   probably overseas for something, but he's here.

25             THE COURT:  Okay.  Let me hear from plaintiff.  Go

5

1    ahead.

2              MR. LEHMAN:  As an attorney one hundred percent

3    he's overseas right now.

4              MS. PATELIS:  Where?

5              MR. LEHMAN:  In Europe.

6              MS. PATELIS:  Well, what is he --

7              THE COURT:  Okay.  I'll ask the questions, because

8    there seems like there seems to be animosity here --

9              MR. LEHMAN:  I just don't want to be cross-examined

10   --

11             THE COURT:  -- so instead of addressing each

12   other --

13             MR. LEHMAN:  -- yeah.

14             THE COURT:  Yes.  Okay.  So what is -- where is he

15   living right now?

16             MR. LEHMAN:  I believe in Portugal.

17             THE COURT:  You believe or you should know where

18   he's living.  So I --

19             MR. LEHMAN:  He's living in Portugal.

20             THE COURT:  Okay.  And is he residing there

21   permanently?

22             MR. LEHMAN:  He's residing there while, I believe,

23   his partner is getting surgery of some sort.

24             THE COURT:  Right.  You mentioned there were health

25   issues.

6

1          MR. LEHMAN:  Yeah.

2          THE COURT:  So for how long will he be in Portugal?

3          MR. LEHMAN:  I think he said it's going to take two

4    to three months, but the doctor doesn't know how long like

5    the recovery process.  I didn't inquire to exactly what kind

6    of surgery is going on with his partner.

7               And in addition, he does a lot of business over in

8    Europe, so he doesn't know if he's coming back.  But when he

9    comes back, he's coming back to Florida.

10         THE COURT:  Okay.  And then in terms of if it's a

11   video deposition, there's obviously a big time difference

12   between Portugal and here.  So how would that work without

13   inconveniencing the defense?

14         MR. LEHMAN:  They may pick the times, and we also

15   have given dates to them, but we'll give dates again and she

16   may pick the times that she would like to depose the client.

17         THE COURT:  And will there be an attorney with him

18   in Portugal or how would -- or you're going to be here and

19   he's going to be in Portugal?

20         MR. LEHMAN:  I'll be here and he'll be in Portugal.

21         THE COURT:  So he will be alone in the room

22   during --

23         MR. LEHMAN:  He'll be alone in the room, and again,

24   as an attorney, I'm not going to coach him.  It's --

25         THE COURT:  Well, you're not going to be with him,

7

1    so I don't know how you would.  But, okay.  And what are the

2    dates that you proposed for the deposition?

3              MR. LEHMAN:  She can pick any dates she wants now

4    in March.

5              THE COURT:  But have you -- but did you give dates

6    already?

7              MR. LEHMAN:  I did email her dates, yes.

8              THE COURT:  What were the dates?

9              MR. LEHMAN:  I don't have them on me.  I can open

10   up my computer, but I just don't have them.  We gave her

11   dates in February.  And, in fact, she had asked us to keep

12   open February 19th.  We kept that open for her, too, but it

13   was the day after the motion and we kept that open.

14             THE COURT:  I see.  Okay.

15             MR. LEHMAN:  If she wants to set the date she wants

16   now for the video deposition, the answer is yes.

17             MS. PATELIS:  Right.  Here's the thing.  Unless I

18   see a ticket, a plane ticket that he's there, I don't find

19   his information as credible at all.

20             THE COURT:  Okay.  I have an attorney in front of

21   me though who is making a representation to the Court.

22             MS. PATELIS:  Okay.

23             THE COURT:  I'm going to assume that as an attorney

24   with the duty of candor that he's telling me the truth.

25             I assume that of every attorney that appears in

8

1    front of me unless I -- unless I have reason to not believe

2    that, but that is the presumption that every attorney who

3    appears before me has.

4            Obviously, if there's information that comes out

5    later that you understand he's in the country, then we can

6    discuss that, but I'm not going -- I'm going to assume he's

7    telling me the truth.

8            MS. PATELIS:  Thank you, Your Honor.

9            THE COURT:  Okay.

10           MR. LEHMAN:  And if it would help take the

11   temperature down, I'm happy to produce that evidence if after

12   that she'll understand that I am telling the truth.

13           THE COURT:  I mean, I assume that's not necessary.

14   You've made a representation in court on the record.  So I

15   have no reason to doubt that he is overseas.

16           I think also once the video, if you do the video

17   deposition, if this proceeds, it can be confirmed and he will

18   be under oath and he will testify as to where he is.  And,

19   obviously, if he's lying about that, that's a problem for the

20   plaintiff.  Right?

21           So with that information I don't want to hold this

22   case up any longer.  I don't know how long he's going to be

23   there.  I'm not going to for -- I'm not going to impose the

24   extra cost of him flying into the country.  I sympathize with

25   him and I get the point he brought this case here and it is

9

1    frustrating and generally for a plaintiff, I think they

2    should appear in the jurisdiction where they brought the

3    case.  Go ahead.

4              MR. LEHMAN:  Except, Your Honor, I would counter

5    that he could have brought it in the Southern District of

6    Florida and we can still make a motion to transfer where more

7    witnesses are convenient.  We could have had that fight.  He

8    wanted to move this thing along.

9              I agree with Your Honor, but I just wanted to --

10             THE COURT:  Right.  And, look, if he were in

11   Florida, we could be discussing that, but it seems like

12   that's not where he is right now, so it's different

13   extenuating circumstances.

14             But what I would like to do right now is set the

15   date for the deposition, so there's no -- so the parties

16   don't have to communicate about it further.  So can we do

17   that?  And I think you're probably going to need a couple of

18   dates I'm assuming with the time difference, or do you want

19   to do it in one day?  What's your preference?

20             MS. PATELIS:  I'd rather do it in two days because

21   of the time difference.

22             THE COURT:  Okay.

23             MS. PATELIS:  So they -- they're I believe seven

24   hours back --

25             MR. LEHMAN:  Sure.

10

```
 1              MS. PATELIS:  What is the time difference in
 2    Portugal?  Seven hours --
 3              MR. LEHMAN:  I don't --
 4              MS. PATELIS:  -- ahead or --
 5              THE COURT:  We can look that up.
 6              MS. PATELIS:  Okay.
 7              MR. LEHMAN:  My --
 8              THE COURT:  All right.
 9              MR. LEHMAN:  -- my question on this, Your Honor, is
10    that because of the seven hour limit under the federal rules,
11    would it be seven hours over two days or is it just one -- I
12    mean, the federal rules say one day seven hours.  I
13    understand that --
14              THE COURT:  It would have to be -- it would be
15    seven hours.  She gets seven hours with him.
16              MR. LEHMAN:  Okay.
17              THE COURT:  And if it's three hours on one day or
18    four the next day, it's seven hours.
19              MS. PATELIS:  Right.  That is correct.
20              MR. LEHMAN:  And we did -- we did actually already
21    offer that to her.
22              THE COURT:  Okay.  So that's -- that's fine.  She
23    gets the same amount of time, whether it's over one day or
24    two days, it's seven hours.  Okay.
25              So let's pick some dates.  Do you want me to look
```

11

1    up the time difference or you have your phone?

2             MS. PATELIS:  I'll do it right now, Your Honor.

3    I'm sorry.

4             THE COURT:  What is it?  It's five hours?  It's a

5    five.  Thank you.  My law clerk did it.

6             MS. PATELIS:  Five ahead.

7             THE COURT:  They are five --

8             MS. PATELIS:  Thank you.

9             THE COURT:  -- hours ahead of us, yes.

10            MS. PATELIS:  Okay.  So it would have to be --

11            THE COURT:  Does that change next week, though?

12            MR. LEHMAN:  Yeah.  It's --

13            THE COURT:  Wait.  Next week is Daylight Savings.

14   So we move ahead an hour.  So that might -- then they're only

15   four hours.  Is that right?

16            MS. PATELIS:  No.  They move the same.

17            THE COURT:  Do they move also?

18            MS. PATELIS:  They move also.

19            THE COURT:  They move also.  Okay.  They have

20   Daylight Savings there, too.  So let's say five hours.  Okay.

21       (Pause.)

22            MR. LEHMAN:  And, Your Honor, the term you did the

23   in-person deposition, that's not how I would have done it if

24   they had wanted him in video, but he had MS and was in a

25   wheelchair.  It wasn't -- he has a lot of difficulty moving

12

1    around before I came on, and that was one of the reasons why

2    he did it in person.

3              THE COURT:  Sorry.  The attorney that did which --

4              MR. LEHMAN:  There was an attorney before me who

5    was in a wheelchair and has MS.

6              THE COURT:  Okay.

7              MR. LEHMAN:  So I'm more than happy to do all the

8    depositions on video.  We have depositions of her experts to

9    be done however it needs to be done.

10             MS. PATELIS:  Okay.  I --

11             THE COURT:  Okay.

12             MS. PATELIS:  -- they ask -- they noticed me for

13   video and then they wanted to do it in person, and I said

14   fine.

15             MR. LEHMAN:  That wasn't me.

16             THE COURT:  Okay.

17             MS. PATELIS:  So we appeared October 8th and I'm

18   still -- if he wants to talk about that, I still have yet to

19   receive my client's transcripts from that deposition on that

20   day.

21             THE COURT:  Okay.  Wait.  Sorry.  Just one issue at

22   a time.  You're saying that you're now willing to conduct the

23   depositions of her witnesses on video and not in person if

24   that's her preference?

25             MR. LEHMAN:  Yes.

13

1          THE COURT:  Okay.

2          MS. PATELIS:  And my client has already been

3     deposed.  I just never received the transcript.

4          THE COURT:  What about the expert?

5          MS. PATELIS:  That's fine.  Yeah.  We could do a

6     video with him as far --

7          THE COURT:  Video for the expert.

8          MR. LEHMAN:  So we're in agreement that all -- move

9     for all depositions are on video.  That's my offer.

10         THE COURT:  That's -- and that's -- okay.  And so

11    that seems like -- are you okay with that and that way it

12    might -- okay.

13         MS. PATELIS:  Yeah.  A month -- a month there is

14    some difficulty and I would notify the Court with respect to

15    video.  I would like to have the opportunity to have him

16    deposed in New York, if I ask him, "Are you in Portugal?

17    Show me."  If he doesn't come through with it, I will make an

18    application if that doesn't work out, but it's pre-motion

19    right now, so I won't --

20         THE COURT:  Wait.  If he doesn't produce proof,

21    you're saying --

22         MS. PATELIS:  Yeah.  That he's alive.

23         THE COURT:  -- that he's in Portugal?  So you're

24    not accepting the attorney's representation here in court?

25         MS. PATELIS:  Not right now.  No.  Based on this --

14

1          MR. LEHMAN:  Yeah.

2          MS. PATELIS:  -- history of this case, it's been

3     very difficult to -- that's rude to counsel, and I'd just

4     like to pick a date right now, and I believe it's 9 o'clock

5     at night in Portugal, like 8:18 right now.  So p.m. there.

6          THE COURT:  Well, then that would make it a seven

7     hour difference?

8          MS. PATELIS:  Yeah.  It's a seven -- it's --

9     because it's like -- I'm from Greece.  So it's the same

10    difference.

11         THE COURT:  All right.  So my law clerk is showing

12    me something that says it's 7:14 p.m. right now in Portugal.

13         MS. PATELIS:  I have 8:18 on the weather app, I'm

14    doing it.

15         THE COURT:  Are there multiple time zones in

16    Portugal?

17         MS. PATELIS:  What part of Portugal is he in?

18         MR. LEHMAN:  I don't --

19         MS. PATELIS:  Lakeland?

20         MR. LEHMAN:  -- can I -- can I just ask her not to

21    question -- it's a little bit rough to question me.

22         THE COURT:  Yes.  Everything we're showing says

23    five hours, but I don't --

24         MR. LEHMAN:  I'm also going to tell this client

25    that the Court made a ruling and that he needs to appear and

1    that --

2              THE COURT:  Yes.

3              MR. LEHMAN:  -- was in his thing.  So I don't -- I

4    mean, if I can't persuade my own client to stay up even till

5    1:00 a.m., I don't -- I've lost my chops as a lawyer.

6              THE COURT:  Yes.  I mean, I think that we want him

7    to be alert and we want to do it at a time of day that makes

8    since where he's not going to say, I'm too tired to answer

9    questions, right?  We want this to be at a time of day that

10   works logistically.

11             So whether -- okay.  But either way, it seems like

12   it should be morning here when you do it.

13             So let's pick the dates.

14             MS. PATELIS:  If it works for opposing counselor,

15   April 23rd and 24th.  I know it's Easter break, but -- or I'm

16   not sure if it was the holiday.

17             MR. LEHMAN:  Are those -- is that a Wednesday and a

18   Thursday?

19             MS. PATELIS:  Yes.

20             THE COURT:  Yes.

21             MR. LEHMAN:  Could we make it a Wednesday and a

22   Friday?  I have child care on Thursdays with my six year old.

23             MS. PATELIS:  Wednesday at 10:00 and Friday the

24   25th is fine --

25             MR. LEHMAN:  Okay.

16

1          MS. PATELIS:  -- Your Honor.

2          THE COURT:  Okay.  So 4/23 and 4/25, at 10:00 a.m.

3    And I don't think we need to decide now which day will be

4    three hours and which will be four.  I think you can --

5          MS. PATELIS:  Hopefully we can work it out.

6          THE COURT:  Yes.  Okay.

7          MS. PATELIS:  I just want to make it clear that

8    it's not seven hours straight.  That we're breaking that up.

9          THE COURT:  Yes.

10          MS. PATELIS:  Okay.

11          THE COURT:  Yes.  Okay.  All right.  Okay.  And

12    then all future depositions for both sides will be by video.

13    Okay.  And I feel like there was one more issue you raised.

14    Am I --

15          MR. LEHMAN:  There's an issue with -- there's a

16    couple issues that -- for houseclean --

17          THE COURT:  Yes.

18          MR. LEHMAN:  -- purposes that would be helpful.

19    But on the transcript, when the prior counsel did the

20    deposition, the -- he only paid for his transcript.  There

21    was no conversation with those two attorneys about who is

22    paying for the other transcript, right?

23          So it actually turns into an issue with the court

24    reporters because they don't want you sharing this stuff and

25    ripping them off.

17

1           THE COURT:  No, no.

2           MR. LEHMAN:  So I'm -- so we're happy to pay for it

3   and turn it over, that's fine.  We'll get that cleared.  But

4   then we would just ask that they pay for theirs so that

5   there's no asymmetry and then we set a deadline that we get

6   it within five days of her getting it.

7           THE COURT:  I mean, usually what the parties can do

8   is you reach an agreement either that, you know, everybody

9   pays for their own --

10          MR. LEHMAN:  Yes.

11          THE COURT:  -- or one side pays for all the

12  transcripts for their witness, where the other side pays.  So

13  how do you -- how do you want to work this?

14          MR. LEHMAN:  If you notice the deposition, you pay

15  for all the transcripts and you give them within five days.

16          THE COURT:  Okay.

17          MR. LEHMAN:  That was the stipulation I wanted.  We

18  just haven't been able to execute it.

19          MS. PATELIS:  Your Honor --

20          MR. LEHMAN:  Is that an agreement?

21          MS. PATELIS:  -- I conduct depositions often.  I

22  usually when I order a court reporter, I pay for it.  I get a

23  copy of it.  I send it to counselor.  And then he pays for

24  his own deposition of the witness.

25          So I don't understand why there's a disconnect.

18

1    This occurred October 8th.  I don't even know who -- what the

2    cost is.  So if they want to split deposition costs for my

3    hour and a half when my client was deposed, I'll gladly

4    consent that he pays his half for his.

5              MR. LEHMAN:  It's not that, Your Honor.  It's you

6    can't cross the court reporters or they cut you off, right?

7              MS. PATELIS:  And I don't what company you're

8    using.  I have no information on --

9              MR. LEHMAN:  I gave -- I actually sent you the

10   information, so just contact --

11             MS. PATELIS:  I didn't get any --

12             MR. LEHMAN:  My -- my belief --

13             THE COURT:  I think you need to work this out with

14   the court reporters.  I do --

15             MS. PATELIS:  I don't know her name.  Can I have

16   her name or the agency that she works for?

17             MR. LEHMAN:  I don't have my -- can I -- I just

18   don't want to be --

19             THE COURT:  Okay.  Yes.  Let's direct it to me,

20   and --

21             MS. PATELIS:  Okay.

22             THE COURT:  -- okay.  All right.  I mean, there is

23   -- I do know from my time at the U.S. Attorney's Office and

24   when I did many, many depositions, that, yes, court reporters

25   told us not to share transcripts, and they wanted

```
 1     everybody --

 2               MS. PATELIS:  Sure.

 3               THE COURT:  -- to order their own.  There are

 4     different companies with different policies.  I don't know

 5     what the particular policy is of this court reporter's

 6     company is, but I'm going to ask you to please provide her

 7     with all the information for the court reporter so she can

 8     reach out.

 9               MS. PATELIS:  Thank you.

10               THE COURT:  Okay.

11               MR. LEHMAN:  May I make this offer?  We will pay

12     for it and we'll give it to her within five days.  We're just

13     asking for it to be a symmetrical agreement.  If any

14     deposition she notices, she pays for it and she gives it

15     within five days of getting the transcript.  I think that's a

16     simple solution rather than us going back and forth on --

17     would you accept that offer?

18               MS. PATELIS:  For you to pay your own trans --

19               MR. LEHMAN:  If we notice the deposition, we pay

20     for it and we provide you with a copy.  And I can --

21               THE COURT:  And you're saying you'll pay --

22               MS. PATELIS:  Fine.

23               THE COURT:  -- for the second transcript as well

24     and you'll do the same with your reporters?

25               MR. LEHMAN:  So with Mr. Pollack --
```

20

1          MS. PATELIS:  Yes, Your Honor.

2          THE COURT:  Okay.

3          MS. PATELIS:  If this is March, then October.  This

4     is why --

5          THE COURT:  Okay.  So that -- so we've reached that

6     agreement.  Everybody understands.

7          MR. LEHMAN:  Thank you.

8          THE COURT:  It's on the record now if there's a

9     question.

10         MR. LEHMAN:  Except, and I'm must being clear, you

11    know, within five days, just so there's a deadline.

12         THE COURT:  Within five days.  Okay.  So within

13    five days you will produce the --

14         MR. LEHMAN:  Five days from the day, I will produce

15    to her her deposition.  And when she does the deposition of

16    Mr. Pollack, within five days of receiving it, she will

17    produce it.

18         THE COURT:  Within five days of receiving the

19    transcript.

20         MR. LEHMAN:  Yeah.

21         MS. PATELIS:  Well, that's when the court reporter

22    is done with it.  So you have to give time for --

23         THE COURT:  No, no, no.  Within five days of

24    receiving the transcript.

25         MS. PATELIS:  Oh, sure.

21

```
1              THE COURT:  Not of the deposition.

2              MS. PATELIS:  No problem, Your Honor.  Yeah.

3              THE COURT:  Right?

4              MS. PATELIS:  No problem.

5              THE COURT:  Okay.  Okay.  Okay.  So it seems like

6      we have an agreement on that.

7              MR. LEHMAN:  Yes.

8              THE COURT:  Anything else the Court needs to

9      address today?

10             MR. LEHMAN:  I just want to clear up an ambiguity

11     in the agreement.  The parties agreed to have a magistrate

12     judge handle this case, not a specific magistrate judge.  I'm

13     indifferent as to how that plays out.

14             THE COURT:  Well, sorry.  Was there --

15             MS. PATELIS:  Wait.  There was a consent order for

16     a district judge.

17             THE COURT:  Hold on.  Hold on.  Hold on.  This

18     should make --

19             MS. PATELIS:  Judge Bulsara had it.

20             THE COURT:  Okay.  So I -- did the party file a

21     consent to proceed before a magistrate judge on the docket?

22             MR. LEHMAN:  Yes, Your Honor.

23             THE COURT:  I don't have the --

24             MS. PATELIS:  We did a consent for --

25             THE COURT:  When it was Judge Bulsara.  But
```

1     generally --

2              MS. PATELIS:  Yes.

3              THE COURT:  -- the way that works, I mean, a

4     consent to a magistrate judge is a consent to it --

5              MS. PATELIS:  No.  It --

6              THE COURT:  -- but you can withdraw it at any time.

7     If you don't want to consent to me having it, that's fine.

8     You can withdraw it.

9              If you want to continue to consent, I think that

10    consent is fine.  Once you consent to a magistrate judge,

11    you're not consenting to a particular magistrate judge.

12             MR. LEHMAN:  That's what --

13             THE COURT:  You're just consenting to a magistrate

14    judge for all purposes.

15             MS. PATELIS:  I'm fine with whatever we consented

16    to.  I have no issue.

17             MR. LEHMAN:  So --

18             THE COURT:  Okay.

19             MR. LEHMAN:  So then, I just want clarity on the

20    record.  My preference is to stay before the magistrate judge

21    now, Your Honor, and just have this case before you.

22    That's what we consented to.

23             So I just want to know if she agrees or if she

24    wants to -- the issue is that --

25             THE COURT:  Yes.

23

1           MR. LEHMAN:  -- Judge Bulsara got promoted.

2           THE COURT:  Yes.

3           MR. LEHMAN:  Or demoted, depending on how you want

4     to look at it.

5           THE COURT:  It's a promotion.  And I believe now

6     he's a -- he's the district judge on this case.

7           MS. PATELIS:  All right.

8           THE COURT:  If the parties, here's what I would do

9     -- because it's really up to the parties, and I'm not putting

10    any pressure on anyone to do what they want.  If the parties

11    are consenting, my understanding is once you filed a consent,

12    you've consented.

13          Judy, how does it read on the docket?  Because I

14    don't have the link to the -- oh, our ECF is down.  Does

15    everyone --

16          MR. LEHMAN:  It just reads as -- I mean, again, I'm

17    making this representation to the best of my ability, but it

18    just reads as a magistrate judge.  I'm indifference to

19    wanting clarity on it, because --

20          THE COURT:  Yes.  I just don't know if it show -- I

21    just don't know whether when Judge Bulsara got elevated, if

22    it changes anything, but I think it --

23          MS. PATELIS:  He was the magistrate judge.

24          THE COURT:  No, I get that.

25          MS. PATELIS:  Yeah.

24

1          THE COURT:  I understand that.

2          MS. PATELIS:  And then he became district.

3          THE COURT:  No.  That I know.  I'm fully aware of

4     that.  What I'm trying to under -- I didn't know if because

5     he was the magistrate judge on it, the way the consent was

6     processed on ECF was different.  That's the only thing I

7     don't know, and are -- let me see.  Let me see if I can pull

8     it up.  I don't know.  My ECF was working earlier, but then

9     it went out again.

10         (Pause.)

11         MS. PATELIS:  I'm not --

12         THE COURT:  Yes.  I'm trying to pull it up, but I

13    don't know.  Our ECF has been awful today.

14         MR. LEHMAN:  I could --

15         THE COURT:  Yeah.

16         MR. LEHMAN:  -- I could raise one other

17    housecleaning issue --

18         THE COURT:  Yes.

19         MR. LEHMAN:  -- while we wait for ECF if you --

20         THE COURT:  Yes.  Go ahead.

21         MR. LEHMAN:  We had made a pre -- a request to make

22    a motion to dismiss their claims before -- based on the

23    complaint that the former counsel who represented the

24    defendants, his name was Sal.  He represented them.  He then

25    stepped away and then he killed himself in a pretty horrible

25

1     thing.

2              My question is since we made the motions to dismiss

3     that complaint, would defendants be amendable to filing an

4     amended complaint or do they want to stand on this complaint

5     right now?  Because she's -- because my colleague has never

6     had an opportunity to draft her own complaint.

7              MS. PATELIS:  Your Honor, I don't know what

8     counselor is referencing, but there is a complaint that's

9     filed.  I took over the case and I have -- I don't even know

10    what counselor is asking for right now.

11             MR. LEHMAN:  It's a -- we would like to make a

12    motion to dismiss their claim --

13             MS. PATELIS:  No.

14             MR. LEHMAN:  -- because we asked for this back in

15    October.  I can find my docket entry.

16             MS. PATELIS:  And if you appeared on November 19th,

17    which your predecessor --

18             THE COURT:  Okay.  All right.  Again, I don't want

19    cross-fighting here.  All right.  I'm very confused.

20             MS. PATELIS:  Me, too.

21             THE COURT:  So I'm trying to pull the docket up.

22             MR. LEHMAN:  Right.

23             THE COURT:  So just give me a moment.  But I would

24    just ask in the future if the parties previewed these issues

25    for me and the letters in advance --

26

1          MR. LEHMAN:  Yeah.

2          THE COURT:  -- that's actually really helpful,

3    because I'm not sure -- I don't know what you're talking

4    about.  So let me --

5          MR. LEHMAN:  I apologize, Your Honor, for not doing

6    that.

7          THE COURT:  Okay.  So there was -- that's why I'm

8    looking for the consent.

9          MR. LEHMAN:  In August --

10         THE COURT:  On the docket -- do you see -- do you

11   have the docket up there?  Okay.  Mine is up.  I'm just

12   looking to see where the -- first I'm going back to the

13   consent issue.  Do you know when you filed the consent

14   approximately?

15         MS. PATELIS:  It had to be maybe October or -- of

16   2024.

17         MR. LEHMAN:  October 16, 2024.

18         THE COURT:  Okay.  So let me just look at that for

19   a moment.  So that was -- oh, wasn't that -- that was

20   after -- that was after Judge Bulsara was elevated.

21         MR. LEHMAN:  He was --

22         THE COURT:  Oh, no.  He was elevated in December.

23         MR. LEHMAN:  -- he was voted in, but then --

24         THE COURT:  He was elevated in December.

25         MR. LEHMAN:  Yes.

27

1          THE COURT:  I remember now.  Okay.

2      (Pause.)

3          Oh, I see.  And then he became -- here's what I

4  would recommend on the consent issue.  I think it carries

5  through.  I think because a separate -- there was a different

6  district judge originally and because of the specific

7  situation with it being Judge Bulsara, who was the

8  magistrate, who then became the district, and it's confusing

9  on the docket.

10          If the parties wish to continue to consent, just

11  file another consent form.

12          MR. LEHMAN:  Okay.

13          THE COURT:  And that will make it clear -- that way

14  on the docket it will be clear that there is, in fact,

15  consent, because I think in any other case, this would not

16  have been an issue, but because Judge Bulsara was the

17  magistrate judge who then got elevated, I think on the docket

18  it's not clear.  It -- so that's the main issue.  Okay.

19          So on that, just -- if you wish to continue

20  consenting, please file another consent form.

21          MS. PATELIS:  Just have plaintiffs send me a

22  consent form and I'll --

23          THE COURT:  That's fine.

24          MS. PATELIS:  -- do that.  Okay.

25          THE COURT:  If it's the form on the court's

28

1    website, it's the same one you signed before --

2              MS. PATELIS:  Yeah, absolutely, Your Honor.

3              THE COURT:  Yes.  Okay.

4              MR. LEHMAN:  Yeah.  I'm fine with that.

5              THE COURT:  Okay.

6              MR. LEHMAN:  Also, Your Honor, my question is if we

7    do not consent, I, you know --

8              THE COURT:  Right.

9              MR. LEHMAN:  -- and can you then handle settlement

10   conferences?

11             THE COURT:  Yes.

12             MR. LEHMAN:  Is that what we're losing in part?  Is

13   that --

14             THE COURT:  So, yes.  If you -- if you do not

15   consent, I would do the settlement conference, but if you do

16   consent and you still eventually want a settlement

17   conference, I will find you another magistrate judge to

18   conduct the settlement conference.  So they're all great at

19   settlement conferences.

20             So I -- whatever the parties prefer.  I will also

21   confer with Judge Bulsara just to see what his understanding

22   is on this issue, but the cleanest thing is if you want to

23   continue consenting is to file a new consent form.

24             If it turns out that you already have a consent and

25   then you decide you don't want a consent, and the current

29

1    consent is still in effect, then I'll let the parties know

2    and you can proceed that way.

3                Now, the other issue that you raised, I'm sorry,

4    that -- can you --

5                MR. LEHMAN:  We have a -- we have a pending request

6    to file a motion to dismiss.  They are counterclaims.

7                THE COURT:  And that was from when?

8                MR. LEHMAN:  August, I believe, or -- it's under

9    pre -- request for pre-motion conference.

10               MS. PATELIS:  But it's already conducted.  I --

11               MR. LEHMAN:  Probably July --

12               MS. PATELIS:  I don't know why he's bringing that

13   up (indiscernible) --

14               THE COURT:  Because I don't see -- I don't see an

15   open matter.

16               MS. PATELIS:  -- now.  It's closed.

17               THE COURT:  Oh, first motion for pre-motion

18   conference, which was in August 14th, and then Judge

19   Matsumoto held a conference.

20               MR. LEHMAN:  Well, Judge, yeah, and what she did

21   was she ordered us first to do a settlement conference and if

22   this date settled, then we would have the right to file the

23   motion to dismiss.

24               Your Honor may know this, but under a lot of Second

25   Circuit precedent, parties have the right to file the motion

30

1    without -- the Judge can ask for a pre-motion conference, but

2    that can't prevent a party from having a motion.

3             MS. PATELIS:  Your Honor, what the Honorable

4    Matsumoto did was ordered us to have mediation --

5             THE COURT:  Right.

6             MS. PATELIS:  -- which did take place before --

7             THE COURT:  I see that.  Yes.

8             MS. PATELIS:  -- counsel -- Attorney Salman (ph).

9    It didn't work out.  Then there were issues with discovery

10   going back and forth and that is why Judge Bulsara ordered us

11   in person on November to get everything straightened out

12   because there is this discord between the parties and --

13            THE COURT:  Right.

14            MR. LEHMAN:  I don't -- I don't -- she keeps --

15   Your Honor, she keeps saying discord.  I don't have this.

16            MS. PATELIS:  (Indiscernible) --

17            THE COURT:  All right.  Let her talk now.  She's

18   speaking now.  Okay.

19            MS. PATELIS:  -- describe what took place, because

20   I remember it.  So I was there.  And you come -- you came on

21   board (indiscernible) AG, and there's a history that's been

22   going on with this case.

23            So I'm saying Judge Bulsara saw that there were

24   issues between the party [sic]. Ordered us to come in.  Set

25   facts and expert deadline.  And then ordered us for a

31

1    conference, which was supposed to take place last month,

2    which he adjourned it.  (Indiscernible) right now, which led

3    to my motion.  But everything else is off.  There's nothing

4    open.  The Judge has decided on everything.

5            So he said after discovery is done, we can then

6    move for whatever relief you would like to move on --

7            THE COURT:  Okay.  I'm not prepared --

8            MS. PATELIS:  -- which would be summary judgment.

9            THE COURT:  -- to address this issue --

10           MS. PATELIS:  Yeah.

11           THE COURT:  -- because I'm not -- this --

12   obviously, I have no background on it, other than I'm looking

13   at the docket, and I don't -- this was not teed up for today.

14           So this is something if you still want to raise, I

15   guess you can raise it if you want to.  I -- I'm just not

16   prepared at this point to address this issue, because the

17   parties did not flag it for me -- you know, you didn't flag

18   it for me.

19           MR. LEHMAN:  Understood.

20           THE COURT:  Okay.

21           MR. LEHMAN:  I didn't know your practices.  I

22   appreciate it.

23           There's one more issue to say how do we tee it up

24   for you, which is a motion to compel documents from

25   defendants.  And we can write a letter and spell it out and

32

1          then maybe it's --

2                    MS. PATELIS:  The Judge --

3                    THE COURT:  But why wasn't all that -- I mean, this

4          was a discovery conference, so why didn't you -- if there

5          were outstanding discovery issues, it should have been in

6          this letter.  This is a discovery issue.  Now there's a

7          motion to dismiss cross-claims now?  So I'm --

8                    MS. PATELIS:  Because it was very clearly resolved

9          by Judge Bulsara and you can see it specifically --

10                   MS. PATELIS:  No.  Yes, it was.

11                   MR. LEHMAN:  I don't -- I didn't --

12                   THE COURT:  Okay.  Are there documents -- are there

13         outstanding document requests that have not been responded

14         to?

15                   MR. LEHMAN:  Yes.  Yes.  And, in fact --

16                   MS. PATELIS:  I have provided an affidavit from my

17         client explaining the situation in December.  We're in March

18         right now, so this back and forth in time and going back to

19         try to rectify something or creating an issue that doesn't

20         exist was nipped in December.

21                   So for counsel to even raise it today is the reason

22         why I'm in court today, because I can't get a date.  I can't

23         get some clear explanation, even with respect to a

24         transcript.  So the Judge ordered me to comply with the

25         document demands, which I did, Bates stamped whatever they

33

1    wanted, and I provided an affidavit back in December from my

2    client stating what is -- what happened with the documents,

3    whether she has them or not, and whatever objections we have.

4            We are in March right now.  So counselor is -- it's

5    incredulous for counselor to even raise this at this point in

6    time without a -- I mean, they didn't even ask for what -- we

7    cross-moved for that relief.  Cross-moved for something and

8    they're here today just opening up the coffin again trying to

9    figure out what they need, which is frustrating.  That's why

10   I wanted to depose the plaintiff in person.

11           MR. LEHMAN:  Was -- I don't know how --

12           THE COURT:  Okay.  Again, this is another issue

13   that wasn't teed up for me, so I'm not --

14           MR. LEHMAN:  But the reason -- if you look at --

15           THE COURT:  Yes.

16           MR. LEHMAN:  -- November 19th, 2024 on the docket,

17   defendants are directed to respond by letter and produce

18   documents outlined in the letter.  She was ordered to

19   produce, and we have a letter from her saying --

20           THE COURT:  Right.  But she's saying she did, and

21   so now I don't --

22           MR. LEHMAN:  -- and I'm saying that I have a letter

23   from her that says, I'm not going to turn over these

24   documents.  There was no -- she -- she's not turning over the

25   defendants personal bank accounts, which we need to figure

34

1    out the value of the company in this case.

2              MS. PATELIS:  Well, instead of moving in December,

3    there was --

4              MR. LEHMAN:  Because we already -- we -- he had

5    already ordered them to do it and --

6              MS. PATELIS:  But I did it in just December.

7              MR. LEHMAN:  I'm trying to talk to the Court, not

8    to you.

9              THE COURT:  Okay.  All right.  Again, if you need

10   to raise another discovery dispute, send me your letters and

11   you can raise them, but I'm not going to -- I can't address

12   it without having the information before me.

13             MR. LEHMAN:  And I was just asking for the

14   procedure by which to address it, since --

15             THE COURT:  My individual rules have --

16             MR. LEHMAN:  Yes.

17             THE COURT:  -- very clear procedures on how to

18   raise discovery disputes.  You can write a letter.  They

19   respond.  And then either I will set another conference or

20   I'll rule on it one or the other.  I tend to do it at

21   conferences, because I like to just -- it's faster, but I'll

22   see what it says.  There's clearly a lot of animosity here.

23             I really hope the parties can somehow put personal

24   feelings aside and work to get this discovery done.  This

25   case has been around for a very long time.  I do realize now,

35

1    you just talked about April 23rd and 25th is the deposition.

2    So the fact discovery deadline was supposed to end on April

3    15th, and so I need to extend that.

4              MS. PATELIS:  Thank you, Your Honor.

5              THE COURT:  But what other fact discovery remains

6    beyond this deposition?  Anything?

7              MR. LEHMAN:  Our only issue is that she should turn

8    over her personal bank statements so that we can see which

9    money was taken out of the account.  That's the one discovery

10   issue we have.  And --

11             THE COURT:  All right.  So I would ask that you --

12   if you can't agree on that, I'll ask the parties --

13             MR. LEHMAN:  If we can.

14             THE COURT:  -- to meet and confer on that issue.  I

15   do require a meet and confer before you bring it to my

16   attention and raise it.  I'm going to extend discovery to the

17   end of April, but all issues need to be resolved by then.

18   Okay.

19             So, because there's no other outstanding

20   depositions, correct?

21             MS. PATELIS:  Just the ex parte.

22             THE COURT:  I'm just -- I'm sorry.  I'm talking

23   about fact discovery.  Anyway, so --

24             MS. PATELIS:  No.  I'm -- no.

25             THE COURT:  Okay.  So April 30th will be the close

1    of fact discovery.  And then I will extend expert discovery

2    for a month after that.  So May 30th for the close of expert

3    discovery.  Okay.

4              MR. LEHMAN:  And does that reset deadlines for

5    dispositive motions, or is that up to Judge Bulsara?

6              THE COURT:  I'm -- so, well, right now, I think you

7    still can send it to me, for the dispositive motions will be

8    before me.

9              MR. LEHMAN:  Okay.

10             THE COURT:  But you're going to re-file the consent

11   form.  But dispositive motions practices will either -- if

12   the consent is still valid for me, then I will determine

13   that.  If not, Judge Bulsara will determine that.

14             But I'm operating under the assumption that the

15   consent is valid right now.  Okay.

16             MS. PATELIS:  Your Honor, with respect to the end

17   of experts, may we have until June 6th, because I have a

18   trial in May on --

19             THE COURT:  Sorry, June 6th, you said?

20             MS. PATELIS:  Yeah.  Please.

21             THE COURT:  Yes, that's fine.  June 6th for the end

22   of expert.  Okay.  All right.

23             MS. PATELIS:  Thank you.

24             THE COURT:  I think that's it for today.  Okay.

25   Thank you.

1          MS. PATELIS:  Thank you.

2          THE COURT:  Good luck.

3          MR. LEHMAN:  I -- Your Honor, I generally have no

4     animosity in this case.  I won't --

5          THE COURT:  Okay.  Well, I would love the parties

6     to get along, and if you can --

7          MR. LEHMAN:  All right.

8          THE COURT:  -- and maybe a fresh start would be

9     good.

10          MR. LEHMAN:  Right.  Amen.

11          THE COURT:  Okay.  Thank you.

12          MR. LEHMAN:  Thank you, Your Honor.

13          (Proceedings concluded at 2:41 p.m.)

14               I, CHRISTINE FIORE, court-approved transcriber

15     and certified electronic reporter and transcriber, certify

16     that the foregoing is a correct transcript from the official

17     electronic sound recording of the proceedings in the above-

18     entitled matter.

19

20          *Christine Fiore*

21     _____          March 21, 2025

22     Christine Fiore, CERT

23          Transcriber

24