UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


KEVIN POLLACK,                    *      Case No. 23-CV-02376(SJB)
                                 *
                                 *      Brooklyn, New York
                                 *      November 19, 2024
       v.                        *
                                 *
JODIE GORDON,                    *
                                 *
            Defendant.           *
                                 *
  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
          BEFORE THE HONORABLE SANKET J. BULSARA
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:            DAVID MICHAEL KASELL, SQ.
                             Kasell Law Firm
                             1038 Jackson Ave., Suite #4
                             Long Island City, NY  11101


For the Defendant:            MARIA PATELIS, ESQ.
                             Maria Patelis and Associates
                             79 Tompkins Circle
                             Staten Island, NY  10301








Proceedings recorded by electronic sound recording,
transcript produced by transcription service.


**Fiore Reporting and Transcription Service, Inc.**
**Shelton, CT 06484 (203)732-6461**

2

1          (Proceedings commenced at 2:25 p.m.)

2                    THE COURT:  Who is here for the plaintiff?

3                    MR. KASELL:  I'm sorry?

4                    THE COURT:  Who is here for the plaintiff?

5                    MR. KASELL:  Your Honor, David Kasell, Kasell Law

6     Firm, for Kevin Pollack, plaintiff.

7                    THE COURT:  Okay.  And for the defendants?

8                    MS. PATELIS:  Maria Patelis, Maria Patelis and

9     Associates, on behalf of the defendants.  Good afternoon,

10    Your Honor.

11                   THE COURT:  Good afternoon.  Okay.  Mr. Kasell, I

12    don't know how to say this more bluntly than the way I'm

13    going to say it now.  You need to stop your repetitive

14    frivolous motion practice.  Why is it frivolous?

15                   First of all, you file motions day after day after

16    day that are discovery motions, which require meet and

17    conferring.  There's no way you met and conferred with the

18    defendants on any of those motions.  They don't have a

19    certification and, therefore, they're frivolous motions as

20    far as I'm concerned.

21                   The second thing is, if you're going to move,

22    rather than moving to compel or to strike immediately to

23    sanctions, okay, you best be sure that you're a hundred

24    percent right.  And when I granted your first motion, you

25    were not a hundred percent right.

3

1       And so, you know, it doesn't bode well for you or

2   your client to keep filing motions day after day, on a

3   weekend, and then file four motions in a matter of four days.

4   I'm not interested in that.  No judge in this court is

5   interested in that.

6       If you continue that, well, I'll just bar you from

7   making any motions without leave of court, and I'll do the

8   same for the defendant.

9       So to me, I couldn't be clearer to both of you that

10  you needed to cooperate in discovery.  And as far as I can

11  tell, your behavior is quite contrary to that.  The calls

12  during deposition practice is reflective of that.  If you

13  can't figure it out, the sanctions will be for filing

14  frivolous motions.

15      Am I clear?

16      MR. KASELL:  Yes, Your Honor.

17      THE COURT:  So you clearly have taken issues with

18  the defendant's expert report and other aspects of expert

19  disclosure.  So be it.  Okay.  That's not a basis for a

20  sanctions motion.  Okay.  Period.  Full stop.

21      You or your client are upset about the fact that

22  the case has been delayed or went to arbitration.  The

23  defendants didn't pay the arbitration fee.  It didn't move.

24  That's clearly affecting your approach to the case in some

25  way or another and that frustration is boiled over into the

4

1    motions practice.  I'm not interested in it.  I'm interested

2    in getting the case to the merits.

3              MR. KASELL:  Understood.

4              THE COURT:  And, you know, and so if you don't cut

5    it out, you know, I'll simply set it down for a trial date

6    and we'll proceed to trial and nobody will get to file any

7    motions.

8              It's clear to me the only thread that is of any

9    merit in your papers is that you may need an extension of the

10   fact discovery deadline, either to take more depositions or

11   to deal with deficiencies that you believe may exist in the

12   defendant's production.

13             How much time do you need to complete all discovery

14   in the case?

15             MR. KASELL:  Well, Your Honor, at this point, I'd

16   like to -- the documents that I'm missing, I'd like to have

17   them.  If the Court would -- I apologize for the motion

18   practice.  We started with a motion to compel and I'm not

19   sure -- I'll go back to that motion to compel.

20             There are clearly documents that should have been

21   produced that have not been and in order for my case to

22   proceed in complete discovery I have to have those documents.

23             THE COURT:  That's wrong, okay, in the following

24   way.  You asked for documents.  The defendant didn't produce

25   them.  You think that they exist.  You think they ought to

5

1    have been produced.

2         If they don't produce them, at the appropriate

3    time, okay, that could be at trial, it could be at summary

4    judgment, you're entitled to a inference.  They can't rely on

5    those documents to advance an argument or produce them later,

6    but at a minimum, the question is do they have -- you have to

7    figure out -- and that often requires taking depositions.

8    Okay?

9         So simply pounding the table, which is effectively

10   what you're doing, to say, I need these documents, you have

11   them, you haven't produced them, isn't going to really get

12   you anywhere.  You've got to sort of close the loop and

13   proceed under the assumption that you're not getting those

14   documents.

15        MR. KASELL:  Your Honor, I'll just take one quick

16   example.

17        The defendants produced bank statements for

18   December, 2000 -- excuse me -- for November, 2020.  They

19   produced bank statements for January, 2021 for that same

20   entity.  There's no December statements.

21        So their production is incomplete.  That is one of

22   those things that we -- I mentioned in my papers to ask them

23   to produce those documents.

24        THE COURT:  Okay.  And so the way to go about that

25   is to get on the phone with opposing counsel and ask where

1    the December statements are.  It's to meet and confer about

2    that issue.  Not immediately come to court and file the

3    motion.

4            The second option is to -- if they say, we don't

5    have them because we don't regularly print out our bank

6    statements and we don't have them, is to serve a subpoena on

7    a third party.

8            So that's not a very good example of the defendants

9    not producing, unless you've had a conversation about why the

10   non-production is occurring.

11           MR. KASELL:  We have spoken about it.

12           MS. PATELIS:  No, we haven't.

13           MR. KASELL:  We've had numerous meet and confers.

14           THE COURT:  No.  That's not --

15           MR. KASELL:  Six --

16           THE COURT:  -- that's not evidence --

17           MR. KASELL:  -- we've had six -- we met and

18   conferred six times.

19           THE COURT:  That's not evident in the papers you've

20   submitted.  Okay.  So let's go back to the beginning.

21           How much time do you need for discovery to be

22   completed?

23           MR. KASELL:  I'd like to extend it three to four

24   months.

25           THE COURT:  And what do you hope to accomplish in

7

1    the three to four months?

2              MR. KASELL:  To complete the documentation.  There

3    are documents that aren't in our production they haven't

4    produced that we believe exist and in some cases are referred

5    to, so that we know that they exist.

6              THE COURT:  Okay.  And so when -- what depositions

7    have been taken?

8              MR. KASELL:  Just one deposition of the defendant.

9    I think I'm probably going to need an additional deposition

10   after those documents are produced.

11             THE COURT:  Okay.  And of whom?

12             MR. KASELL:  Of the principal, Jodie Gordon.

13             THE COURT:  And you took that deposition already?

14             MR. KASELL:  We did.

15             THE COURT:  Okay.

16             MR. KASELL:  We took her deposition.

17             THE COURT:  And so had you provided a list of the

18   documents in writing in a deficiency letter to the

19   defendants?

20             MR. KASELL:  I have not.

21             THE COURT:  Okay.  Well -- and you moved for

22   sanctions and non-production on those kind of -- on those --

23   the failure to produce those documents?

24             MR. KASELL:  Yes, Your Honor.

25             THE COURT:  Okay.  So there's your problem.  Okay.

8

1    And if you can't -- and, you know, so I'm not hear to babysit

2    the parties on how to litigate, but if you don't do that, no

3    judge is going to grant you any motion, because you haven't

4    set out the foundation.

5         You may have the greatest motion in the world and

6    they may be the worst non-compliant party in the world, but

7    you're not going to get a dollar or an ounce of patience from

8    anybody in this courthouse.

9         So how long would it take you to produce a letter

10   to the defendants outlining all of the documents you believe

11   that either exist or should have been produced that have not

12   been produced?

13        MR. KASELL:  I don't think it would take very long.

14   I think the motions to compel are easily -- you know, I can

15   pull the information from there relatively quickly.

16        THE COURT:  Okay.  So why don't you send a

17   deficiency letter to the defendants by next Tuesday.

18        MR. KASELL:  Yes, Your Honor.

19        THE COURT:  Okay.  Now, Ms. Patelis, how long would

20   you need to respond to that letter?

21        MS. PATELIS:  Your Honor, I would need two weeks to

22   respond to the letter, but given that it's Thanksgiving,

23   maybe three weeks.  I'm not -- that's fine.  Two weeks.  It

24   doesn't -- I'll be complying with the Court.

25        THE COURT:  Well, what I'll do is the following.

9

1    I'll give you till the 5th to respond to the letter.

2         Now, while I'm speaking with you, you clearly read

3    -- you must have read the repetitive motions that were filed

4    by plaintiff's counsel.  So you have some sense of what the

5    things are that he believes are missing.  That may not be a

6    complete sense because you were never given a deficiency

7    letter.

8         That being said, I take counsel at his word that he

9    has certainly spoken to you about various documents over

10   time.  Do you anticipate that there are more documents to be

11   produced from your client at this point in the case?

12        MS. PATELIS:  Your Honor, I just was privy to the

13   Chase statements that they were missing from the letter that

14   I saw.  I provided documents since July, the same set of

15   documents.  July, I submitted them because they weren't Bate

16   stamped back in September.  Then they weren't happy with my

17   production again.  I said, what do you need?  They wanted it

18   Bate stamped in a certain way.  Fine, third time production

19   of the same documents since July.

20        So since July to now, from the last motion that was

21   filed by counselor, that's when I saw that there was, like,

22   Chase account statements that they were missing, but Mr.

23   Pollack, who is the plaintiff, had access to these accounts

24   as well.  So I will cooperate and provide.

25        THE COURT:  Why don't you answer my question, which

10

1    is --

2         MS. PATELIS:  Sure.

3         THE COURT:  -- you saw the letters.  Putting aside

4    that they're being denied and the motions were premature, to

5    give some indication of what plaintiff's counsel believes are

6    missing from the production, are there other documents you

7    believe are missing?  I'm sorry.  That you would be producing

8    in light of what you've learned through those letters?

9         MS. PATELIS:  Aside from the Chase statements,

10   which I can obtain, and I kept -- I will provide documents,

11   but I have nothing else to produce if that's --

12        THE COURT:  Okay.  So this is what I'm going to say

13   is you can submit your letter by the 5th and your client has

14   to complete production of any additional documents by

15   December 19th.

16        MS. PATELIS:  Okay.

17        THE COURT:  Okay.  So in the response on the 5th,

18   you can say, oh, we have these documents.  We don't have

19   these other documents, et cetera.  And your ambition, okay,

20   you should provide a declaration from your client that

21   indicates the efforts made to search for responsive documents

22   and the statement, if appropriate, that indicates that there

23   are no other documents to be produced.

24        MS. PATELIS:  Thank you.

25        (Pause.)

11

1          THE COURT:  Are there any outstanding document

2     requests, putting aside follow-ups and the rest that we're

3     basically talking about that are outstanding?

4          MR. KASELL:  They've responded to them, so there

5     aren't outstanding requests.

6          THE COURT:  Okay.  And are there outstanding

7     depositions?

8          MR. KASELL:  Just of the experts at this point.

9          MS. PATELIS:  I have to depose the defendant.

10          MR. KASELL:  Oh, that's -- yeah.  Apologize.

11          MS. PATELIS:  So they were setting me on a date for

12     next week, and I just want some more time.

13          THE COURT:  The plaintiff you mean.

14          MS. PATELIS:  The plaintiff.

15          THE COURT:  Yes.

16          MS. PATELIS:  And then depose the plaintiff.

17          THE COURT:  Okay.

18          MS. PATELIS:  So I just received their document

19     responses yesterday, so I need an opportunity to look them

20     over and depose them at some point in December.

21          THE COURT:  I didn't say this part, but I hope, Mr.

22     Kasell, that there's no deficiency in your document

23     production or responses or that they were never late, because

24     let me be clear, you know, what's good for the goose is good

25     for the gander.

12

1          MR. KASELL:  Your Honor, we produced 3,495 pages of

2     documents, was everything my client had.

3          THE COURT:  Well, that's my point --

4          MR. KASELL:  Yeah.

5          THE COURT:  -- which is you don't seem to get it,

6     which is when you say it's everything my client had, that's

7     what they're saying, too.  Okay.

8          And there are ways to test that and it may be that

9     there are documents that once existed in your client's

10    possession or he has no longer access to them or he can't get

11    access to them and he can write a declaration that says, I

12    don't have these documents.  I searched for them.  I don't

13    have emails prior to this.  You think I have this

14    information, but I don't. And you're entitled to alarm on

15    that.  Okay.  As are they.

16         So I don't need your pounding on the table that I

17    expect these documents to exist because I did something for

18    you that you should have done on your own, okay, which is I'm

19    making them provide a declaration about the efforts to search

20    for -- and for documents and an indication that there are no

21    more responsive documents.  They can ask the same from your

22    client.

23         And then due to your client's deposition, you know,

24    he can be asked about his efforts to search for documents,

25    and you can take another deposition, we'll see, depending on

13

1   what the response is, if you think it's appropriate of Ms.

2   Gordon about document collection and production  but, you

3   know, you wouldn't be given a lot of time to take that

4   deposition and you would have to figure out whether it was

5   worth your while.

6           But that's what I mean by (indiscernible)

7   aggressive in moving for sanctions and making motions when

8   your client is going to be in the same position in a little

9   bit.

10          So I hope that there are no deficiencies that the

11  defendant can identify.  I mean, that's precisely why you're

12  required to meet and confer.

13          Okay.  When would you like to take the plaintiff's

14  deposition?

15          MR. KASELL:  The documents are going to be produced

16  you said by December something?  So a short while --

17          THE COURT:  You represent the plaintiff.  I was

18  asking defendant's counsel when she wanted to defend --

19  depose your client.

20          MR. KASELL:  Oh, I'm sorry.

21          MS. PATELIS:  Your Honor, after December 18th

22  possibly.  Should I pick a range of -- this is where me and

23  counsel don't agree.  They pick a date and they stand by it

24  and if there's a change or if there's something on or about,

25  it's just we can't communicate in that way.

14

1         They wanted my client deposed on October 8th.  She

2    was deposed for 30 minutes, Your Honor.  Not one document was

3    shown to her that I produced.

4         So I don't want plaintiff seeking this as an

5    opportunity --

6         THE COURT:  And I got two calls during that

7    deposition.

8         MS. PATELIS:  Yes.

9         THE COURT:  I mean, it's ridiculous.

10        MR. KASELL:  Your Honor, my opponent, she's

11   mischaracterizing things.  Not 30 minutes.  An hour and a

12   half.  And there were constant interruptions of the

13   deposition.

14        MS. PATELIS:  Objection to form.  Objection to --

15        THE COURT:  Stop, stop.  I'm just going to clear

16   it.  I mean, listen, you had your opportunity to depose the

17   defendant.  You had seven hours.  I don't care whether it was

18   interrupted every second.  You stopped after 90 minutes.

19   Okay.  You're going to be hard pressed to get another

20   deposition of the defendant.

21        MR. KASELL:  Well, there's documents that haven't

22   yet been produced.

23        THE COURT:  You keep persisting along that

24   assumption.  You'll get a declaration.  You can -- the point

25   is you can cross-examine the defendant at trial about

15

1    production, but you don't get to depose the person about it.

2    Okay.  So the point is you're get a discovery device, it

3    doesn't mean that the -- and if you waste it, you know, but,

4    you know, I think both sides need to figure -- if you can't

5    even agree on deposition dates, it's quite unfortunate.  I

6    mean, it's ridiculous as far as I'm concerned.  Doesn't bode

7    well for your case or her case as far as I'm concerned.

8                MR. KASELL:  Your Honor, I'm sure the Court doesn't

9    really want to hear it on the one hand.  On the other hand,

10   this is the first time in my career, and I was admitted in

11   1994 or '95, I've moved for sanctions in this court against

12   any attorney.

13               THE COURT:  Well, you managed to do it four times

14   in four days, which is ridiculous.  Okay.

15               MR. KASELL:  But it's --

16               THE COURT:  Stop.  Stop.  I'm not interested.

17               MS. PATELIS:  We have a mediation scheduled for

18   tomorrow, continuing to mediation.  I just want to update the

19   Court.

20               THE COURT:  I understand that.  I was going to get

21   to that later.

22               MS. PATELIS:  Okay.

23               THE COURT:  But --

24               MS. PATELIS:  Sorry.

25               THE COURT:  -- if I give the parties until the end

16

1    of January to complete fact discovery, I think that's

2    sufficient time.  Any reason it's not?

3              MR. KASELL:  I don't know for sure.  I might want a

4    little more time but, you know, if that's what the Court

5    orders, that's fine.

6              THE COURT:  To do what exactly?  That's what I'm

7    trying to figure out.

8              MR. KASELL:  Then that's fine.  End of January will

9    be fine.

10              THE COURT:  I mean, you -- if you told me there was

11    a witness you didn't get a chance to depose, and that you

12    were going to take his deposition or her deposition, I'd be

13    open to that, but unless you can tell me --

14              MR. KASELL:  The only thing I would anticipate are

15    possibly subpoenas for documents that, you know, we haven't

16    received.  I don't know if that will take more time and

17    because they would go to third parties, it could happen

18    outside of the close of discovery.  So --

19              THE COURT:  I'll give the parties until the end of

20    January.  There's only one deposition that remains to be

21    taken and you're getting a declaration about the documents

22    that are produced or not produced, which is more than --

23    which is frankly what you should have asked for in the first

24    place.

25              Okay.  And then you each have submitted expert

1    reports?

2              MR. KASELL:  Yes, Your Honor.

3              MS. PATELIS:  Yes, Your Honor.

4              THE COURT:  Okay.  And there's one expert per side

5    or two?

6              MS. PATELIS:  I have two.

7              THE COURT:  And you have one?

8              MR. KASELL:  We have one.

9              THE COURT:  And how much time to take their

10   depositions?  Can those be completed by the end of March?

11             MR. KASELL:  I would think so.

12             THE COURT:  Ms. Patelis.

13             MS. PATELIS:  Yes.

14             THE COURT:  Okay.

15             MS. PATELIS:  I would even do it in February so, I

16   mean --

17             THE COURT:  Sorry.

18             MS. PATELIS:  I would even do it at the end of

19   February.

20             THE COURT:  Well, I'll make it the end of March.

21             MS. PATELIS:  Okay.  Thank you.  And Mr. Kasell,

22   who is Mr. Lehman?

23             MR. KASELL:  He's my partner.

24             THE COURT:  Okay.

25             MR. KASELL:  He's admitted in Connecticut.  I think

18

1    he's applied for admission pro hac vice here.

2              THE COURT:  Yes.  That was the only reason I was

3    confused, which I didn't understand, but that's fine.  I

4    will --

5              MS. PATELIS:  He's your painter?

6              MR. KASELL:  Yeah.

7              THE COURT:  We'll grant the motion in due course.

8    I mean, he should just waive in.  It would save you and your

9    firm a lot more money.

10             MR. KASELL:  Okay.

11             THE COURT:  Right?  I mean, it's -- it's like 200

12   something dollars for pro hac and to be admitted I think it's

13   like three or 400.  I mean, it --

14             MR. KASELL:  And then you're done, right?

15             THE COURT:  -- but it may even be less than -- if

16   he's admitted and he may be able to even waive in.  I don't

17   even know.

18             MR. KASELL:  Right.

19             THE COURT:  But it's -- the pro hac is 200.

20             MR. KASELL:  I'll have them check.

21             THE COURT:  I think the admission fee is 400, but

22   it would be --

23             MR. KASELL:  Thank you.  That's good advice.

24             THE COURT:  I mean, listen, I'll leave that motion

25   open.  You can write to me and say that you are withdrawing

19

1    it and then would rather just -- he'll move for admission so

2    you can save the -- and it can be for all cases.  So we'll

3    leave that motion unresolved for now.  Okay.

4         (Pause.)

5              THE COURT:  We'll have another status conference

6    Friday the 21st of February at 11:00 a.m., and I'll put that

7    in the docket entry, so you don't need -- nobody has to write

8    it down.  Unless you're just checking your calendar.

9         (Pause.)

10             THE COURT:  Okay.

11             MR. KASELL:  Oh, you said February 21st?

12             THE COURT:  Yes.

13             MR. KASELL:  I am scheduled to be on vacation.

14             THE COURT:  Okay.

15             MR. KASELL:  I could do the following -- any time

16   the following week, or earlier in that week.

17             THE COURT:  And how about the 28th?

18             MR. KASELL:  The 28th is fine.

19             THE COURT:  Ms. Patelis.

20             MS. PATELIS:  28th is fine.  Yes.

21             THE COURT:  Okay.  And the close of all discovery,

22   which means the expert deadline will be March 28th.  Do

23   defendants anticipate a summary judgment motion?

24             MS. PATELIS:  There was an issue that came up.

25   Counsel had filed a motion to strike my counterclaims by

20

1    letter and a counter -- I requested a letter to strike their

2    complaint, a counter-motion.  It was addressed by Judge

3    Matsumoto that said if we didn't agree to mediation we should

4    move forward with those motions to strike.  But I'm not sure

5    how the Court would like to proceed with that, or is that --

6            THE COURT:  Well, let me ask you the following.

7    Assume for a moment those claims on both sides are in the

8    case and there's -- and the motion to strikes was on both

9    sides, or to dismiss are denied.  Does the discovery in the

10   case change?

11           MS. PATELIS:  No.

12           THE COURT:  Well --

13           MS. PATELIS:  That ends the discovery.  I mean, it

14   depends.

15           THE COURT:  Well, how -- and that's what I'm trying

16   to figure out, like, because let me clear, right, what I'm

17   suggesting is any arguments either side would have about the

18   merit of those claims or counterclaims can be teed up in

19   summary judgment.

20           MS. PATELIS:  Right.

21           THE COURT:  And so I'm trying to figure out if it's

22   really necessary to tee up those motions in advance of

23   summary judgment before discovery is closed.  It seems to me,

24   given what I know about the case, is that we could complete

25   discovery and any arguments any party had whether about a

21

1    claim, a counterclaim, dependent on facts or not, can be teed

2    up on summary judgment.

3                 MS. PATELIS:  Absolutely.

4                 THE COURT:  And, therefore, I can't -- I can't

5    preclude you from filing -- either side from filing such a

6    motion, but I would simply say, you know, it should wait for

7    summary judgment --

8                 MS. PATELIS:  Okay.

9                 THE COURT:  -- because we're about to complete

10   discovery.  Any reason that that's -- we should proceed

11   differently?

12                MR. KASELL:  Not from my perspective, Your Honor.

13                THE COURT:  Okay.

14                MS. PATELIS:  No, Your Honor.

15                THE COURT:  And do you intend to move for summary

16   judgment?

17                MR. KASELL:  I have to talk to my client about it

18   again.  We had talked about it recently and decided not to.

19                THE COURT:  Okay.  You don't have to decide now,

20   and we'll -- I was just trying to get a sense.  We'll discuss

21   that in greater detail in February and we can talk about, you

22   know, a schedule for that.  If they're all cross motions, I'd

23   like to consolidate them briefing so it's more efficient for

24   the parties, and you only have to submit one brief and you

25   only have to submit one brief, but you both get a reply and

22

1    not -- so at least there's one consolidated brief.

2                So you can cross move and respond to her motion in

3    one brief and then file a reply after it's -- and you can --

4    we'll figure out the scheduling, but we can discuss all that

5    in February.

6                And the mediation is virtual or in person tomorrow?

7                MR. KASELL:  Virtual.

8                THE COURT:  And both of your clients are

9    participating?

10                MS. PATELIS:  Yes, but I spoke to -- I had the time

11    12 o'clock.  Do you -- are you good with 12:00 for tomorrow?

12                MR. KASELL:  Yeah.

13                MS. PATELIS:  Okay.

14                MR. KASELL:  I wasn't sure it was going forward.

15    So that's --

16                MS. PATELIS:  No.  I would think it was going

17    forward.  I mean, I have Mr. Summons' available dates in the

18    event they wanted to make sure like all the experts are in

19    line, because I'm trying to get two experts at one time, and

20    they already have a schedule.  So --

21                THE COURT:  So let me say, let's not get

22    distracted.  I just want to make sure the parties were going

23    to proceed with the mediation tomorrow --

24                MS. PATELIS:  Yes.

25                THE COURT:  -- as far as they both knew and we

23

1    weren't going to run any -- any obstacles there.  Okay.

2            MS. PATELIS:  Are we allowed though, to push it out

3    so our experts can be aligned and they could be present,

4    because the mediator would like all the experts to be --

5            THE COURT:  That's --

6            MS. PATELIS:  -- present.

7            THE COURT:  -- up to the mediator.

8            MS. PATELIS:  He said it's fine.

9            THE COURT:  And that's -- and the parties.  It's

10    not -- I don't control mediator schedule.

11            MS. PATELIS:  Okay.

12            THE COURT:  You have to communicate with him.

13    Look, there are reasons, I would suggest just broadly, if you

14    could get the mediator -- there are reasons even to have

15    multiple rounds of mediation, okay, to have an initial

16    discussion about where the parties are.  Even if you can't

17    complete it, I mean, I leave that obviously to the mediator,

18    but there's nothing wrong in going forward tomorrow and

19    having a follow-up session.

20            But if you haven't -- particularly if you haven't

21    exchanged recently demands and offers and haven't heard, at

22    least, whatever view the mediator might have about the case.

23    If you have already done that, you know, in other words if

24    you're fairly recent on where you are, then really, you know,

25    I leave it to the mediator and his judgment about whether or

24

1    not he, you know, he wants to wait.

2            But my point is there's a building block element to

3    mediation sometimes and if there's something to be achieved,

4    even if it's only 30 minutes or an hour tomorrow, it may be

5    worthwhile for you and your client, particularly if it's

6    virtual.

7            MS. PATELIS:  Absolutely.

8            THE COURT:  Okay.

9            MR. KASELL:  I'd have to say, I think the mediator

10    has done a very good job when we were on with him before.

11    So --

12            MS. PATELIS:  Yeah.  He knows how to calm us down.

13            THE COURT:  Okay.  Anything else we should talk

14    about today?  Okay.  I'll put all of the deadlines of issue

15    discussed in an order.  I wish you all good health.  Have a

16    nice day.

17            MS. PATELIS:  Thank you, Your Honor.  I just wanted

18    to confirm one more thing.

19             So I'm speaking to you right now. Are you going to

20    provide me with dates that your client is going to be

21    available and that there's no deposition for next week, for

22    the end of December, please.

23            MR. KASELL:  End of December is when you want the

24    deposition?

25            MS. PATELIS:  Yes.  That's what we said.

25

1          THE COURT:  I said the fact discovery was the end

2     of January, so you can do it whenever you would like.

3          MS. PATELIS:  Okay.  So when -- just provide me

4     with three dates that are good for your client, please.

5          MR. KASELL:  Okay.

6          MS. PATELIS:  Thank you.

7          THE COURT:  Thank you, all.

8          MR. KASELL:  Thank you, Your Honor.

9     (Proceedings concluded at 2:55 p.m.)

10          I, CHRISTINE FIORE, court-approved transcriber and

11    certified electronic reporter and transcriber, certify that

12    the foregoing is a correct transcript from the official

13    electronic sound recording of the proceedings in the above-

14    entitled matter.

15

16          *Christine Fiore*

17    _____          April 7, 2025

18    Christine Fiore, CERT

19         Transcriber

20

21

22

23

24

25