UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KEVIN POLLACK,

                       Plaintiff,

                                                                  Case.:23 Civ. 2376 (SJB) (LKE)

      -against-

JODIE LOUISE GORDON (also known as

JODY GORDON) and FUSION MODELS

BK LLC,

                       Defendants.

------------------------------------------------------------------X
SIRS:

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY AND REPORT OF QUAN A. VU**

Defendants Jodie Louise Gordon (also know as Jody Gordon) ("Gordon") and Fusion Models BK LLC (Fusion BK) ("Defendants"), respectfully submit this memorandum of law in support of their motion to exclude the expert testimony of Quan A. Vu ("Vu") proffered by Plaintiff Kevin Pollack ("Pollack or "Plaintiff").

## PRELIMINARY STATEMENT

Defendants hereby move to exclude the valuation testimony of Plaintiff's proffered expert Quan A. Vu of Fusion Modeling Agency LLC. ("Fusion Modeling"), because it is based on: (i) an incorrect standard, and therefore will not assist the trier of fact; and (ii) an overwhelming incomplete and incorrect review of the record, which results in an unreliable application of valuation methodologies. The Court should note that that Fusion Modeling Agency is not a party to this action because it was judicially dissolved on April 30, 2021 by the Honorable Reginald A. Boddie under Jody Gordon v. Fusion Modeling Agency, LLC., bearing Index No.: 500709/2021. A copy of the Decision and Order is annexed hereto as Exhibit 1. The order specifically states that "Limited Liability Company Law § 702 governs dissolution, and provides that judicial dissolution of an LLC is available 'whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.' To prevail, petition must establish, in the context of the terms of the operating agreement or articles of incorporation, that (1) the management of the entity is unable or unwilling to reasonably permit or promote the stated purposed of the entity to be realized or achieved, or (2) continuing the entity is financially unfeasible (*Matter of 1545 Ocean Avenue, LLC,* 72 AD3d 121, 131 (2nd Dept 2010). Here, the petitioner established grounds for judicial dissolution. In the aforementioned action, the Court upheld that Defendant's Gordon Petition that stated that the business relationship

with Kevin Pollack has become irreconcilable based on Pollack's refusal to consent to overdraft protection, which the bank would not issue without Mr. Pollack's consent, or co-sign on a loan."

It should be noted that Vu does not hold any valuation specific credentials such as ASA, CFA or CPA, ABV. Ex. 4 at 8:23-25, 9;2. And that Vu is not accredited by any professional valuation body such NACVA, ACA, AICPA. Ex.4 at 9:3-10 Vu has also never been retained as an expert in a matter of litigation or testified under oath in a business evaluation context. Ex 4 at 12:25, 13: 2-14.

Vu's opinion cannot assist the trier of fact back because it was rendered without addressing the fair market value or fair value (statutory). In the deposition, Vu states that he did not even consider using fair market value as defined under IRS REV rule 59 through 60. Ex 4 at 27:16-19. Fair market value is the most widely recognized and accepted standard of value. Not only does Vu's valuation not address fair market value, but Vu also did not discuss the operation of Fusion with Gordon who is the day-to-day operator of the business and the sole decision maker unlike her partner who is not involved with the operation of the business. It is impossible to know how he made the decision to use a valuation approach based on the assumption that a mature company's income is not representative of what they would earn in the future.

Vu's opinion is based solely on a deliberately limited set of data points, without regard for any of the testimony of Gordon or any conversation with her. This approach results in fundamental flaws that go well beyond questions of credibility and/or weight of his testimony. Vu himself stated that he is not aware of any authoritative sources that support a deviation from fair market value in favor of his approach. Ex 4 at 45:9-12.

Vu's reliance on the Discounted Cash Flow or DCF method, which is the wrong standard, results in an expert opinion that is both irrelevant and unreliable. For these reasons, and as more

fully set forth below, Defendants respectfully submit that Vu's expert testimony should be excluded.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court should note that that entity that was valued is **Fusion Modeling Agency LLC** (Fusion). Fusion is not a party to this action because it was judicially dissolved on April 30, 2021 by the Honorable Reginald A. Boddie in the action entitled <u>Jody Gordon v. Fusion Modeling Agency, LLC.</u>, bearing Index No.: 500709/2021. Gordon filed a petition in Kings Supreme Court to dissolve the LLC because Pollack was not cooperating with running the LLC. Her petition was granted and a copy of the Decision and Order is annexed hereto as Exhibit 1. The order specifically states that under "Limited Liability Company Law § 702 governs dissolution and provides that judicial dissolution of an LLC is available 'whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.' To prevail, petition must establish, in the context of the terms of the operating agreement or articles of incorporation, that (1) the management of the entity is unable tor unwilling to reasonably permit or promote the stated purposed of the entity to be realized or achieved, or (2) continuing the entity is financially unfeasible (*Matter of 1545 Ocean Avenue, LLC,* 72 AD3d 121, 131 (2nd Dept 2010). Here, petitioner (Gordon) established grounds for judicial dissolution. In the aforementioned action, the Court upheld that Gordon's Petition that stated that the business relationship with Kevin Pollack has become irreconcilable based on Pollack's refusal to consent to overdraft protection, which the bank would not issue without Mr. Pollack's consent, or co-sign on a loan." The Court should note that Pollack never filed a motion to vacate the default or appear and reargue the Decision made by the Kings County Supreme Court.

**Discovery in the Instant Litigation**

Plaintiff, Pollack, commenced this action on March 28, 2023 by way of complaint against Jodie Louise Gordon (also known as Jody Gordon), and Fusion Models BK LLC (DE No. 1). Pollack, was 35.222% owner of Fusion Modeling Agency LLC. The complaint alleges five causes of action that Defendant (1) breach of contract, (2) tortious interference with contract (3) breach of fiduciary duty, (4) inducement of breach of fiduciary duty, and (5) Violation of NY LLC Company Law 1120(B) and Operating Agreement. (DE No.1). This was filed after the dissolution of Fusion Modeling Agency, LLC.

On May 16 2023, the Defendants filed an Answer with a counterclaim seeking legal fees. (DE No. 12). Fusion Modeling LLC was dissolved by order of the Kings County Supreme Court under Index No.: 500709/2023 in the matter of Gordon v. Fusion Modeling Agency, LLC.

**Summary of Vu's Opinion**

On or about November 4, 2024, Plaintiff served Vu's expert report utilizing the Discounted Cash Flow ("DCF) methodology. Ex. 2. Vu opines that the main idea behind the DCF is that the value of an investment today is equal to the sum of all its future case flows, adjusted for cash flow risks and time value of money, which reflects the idea that money available today is worth more the same amount in the future to its potential earning capacity. The DCF methodology is widely used to assess the intrinsic value of a business or investment by considering both the future earnings potential and risk factors.

Vu further claims that his valuation is based on several sources of information including Profit and Loss (P&L) statements from for 2013 through Q2 2020 provided by Fusion, Fusion's tax filings, balance sheets, bank statements and credit card statements turned over in discovery in this litigation (D0001-02139) and *publicly* available data for a publicly traded comparable company, Wilhelmina International, Inc. (Wilhelmina; Nasdaq-CM ticker: WHLM) including the

information and financial data available in Wilhemina Annual Reports (10-K) and Quarterly Reports (Form 10-Q). Exhibit 2. The Court should note that Fusion is not a publicly traded company.

ARGUMENT

**1. Vu's Testimony Should be Excluded**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. It provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

a. the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

b. the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

c. the testimony is based on sufficient facts or data;

d. the testimony is the product of reliable principles and methods; and

e. the expert has reliably applied the principals and the methods to the facts of the case.

Fed. R. Evid. 702. Before admitting expert testimony, a trial court must conduct a three-step inquiry; "(i) whether the witness is qualified to be an expert; (ii) whether the opinion is based on reliable data and methodology; and (iii) whether the expert's testimony on a particular issue will assist the trier of fact." <u>523 IP LLC V. Cure MD Com</u>, 48 F. Supp. 3d 600, 642 (S.D.N.Y 2014)

(citing Namely v. City of New York, 414 F. 3d 381, 396 (2d Cir, 2005). The proponent of the expert testimony bears the onus of demonstrating that the expert is qualified, that his or her methodology is reliable, and that his or her testimony will assist the trier of fact. See Id. The role of the Court is to ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993). Here, for the reasons discussed below, Vu's opinion will not assist the trier of fact, is unreliable, and should be excluded.

While the Court has a duty to admit expert testimony that is reliable and will assist the trier of fact, Daubert, also charged the Court with a duty to "ensure that the courtroom door remains closed to junk science", Amorgianos v. National R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). Accordingly, the trial court acts a gatekeeper by ensuring that every step of the expert's analysis is reliable. Acting in its gatekeeper role, the trial court has a duty to "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws on opinion from those facts, and how the expert applies the facts and methods at hand. Id

### A.   Vu's Valuation Will Not Assist the Trier of Fact

The requirement that expert evidence or testimony assist the trier of fact "goes primarily to relevance." Daubert, 509 U.S. at 591. In addition to its fundamental failures as set forth, *infra,* Vu's expert opinion will not assist the trier of fact in this case because he did not conduct a valuation under the governing valuation standard.

Vu's valuation of Fusion Modeling Agency ("Fusion") is fundamentally flawed. It applies the wrong standard of value, relies on unsupported and speculative assumptions, and misuses accepted valuation methodologies. Most critically, Vu values Fusion on an "intrinsic

value" basis rather than the legally mandated fair market value, fails to reconcile the actual financial history of the business, and arbitrarily assumes extraordinary reductions in expenses and unsustainable growth rates. Ex 4 at 27:16-19.

Defendants' rebuttal expert, Heidi F. Muckler, CPA/ABV/CFF, CFE, CVA ("Muckler"), identifies numerous fatal flaws in Vu's analysis, confirming that his testimony does not meet the threshold reliability required under Rule 702. The Court should exclude Vu's testimony in its entirety. A copy of the Rebuttal Report to the Valuation of Fusion Modeling Agency Prepared by Quan A. Vu dated November 18, 2024 is attached as Ex. 3.

Vu expressly states that his analysis seeks to determine Fusion's "intrinsic value." Intrinsic value reflects a security analyst's subjective judgment and is not a recognized standard for judicial dissolution or business valuation disputes.

The controlling standard is fair market value, defined by IRS Revenue Ruling 59-60 as "the price at which property would change hands between a willing buyer and a willing seller… both parties having reasonable knowledge of the relevant facts."

As Muckler explains, Vu's reliance on intrinsic value is legally improper and renders his conclusions irrelevant to the issue before the Court. (Muckler Rebuttal Report at 2–4). Courts have excluded experts who apply incorrect standards of value. See, e.g., Lippe v. Bairnco Corp., 288 B.R. 678 (S.D.N.Y. 2003) (excluding expert testimony party because of how the expert applied the methodology). (Many authorities recognize that the most reliable method for determining the value of a business is the discounted case flow… method). Vu's testimony fails to identify comparable companies that have been sold for known prices.

According to Vu, he estimates that Fusion's value to be between $3.4 million and $5.4 million is based on "intrinsic value." "Intrinsic value" is an inherently subjective and speculative concept. It cannot be tested, has no known rate of error, and it is not subject to any particular standards or controls, See Daubert, 509 U.S at 593-595, 113 S.Ct 2796-2798. The shortcomings of this approach was exacerbated by the fact that Vu justifies use of DCF method because there are no publicly available precedent transactions and uses only one public traded comp (i.e. Wilhelmina.).

**B. Vu's Use of the Discounted Cash Flow Methodology Is Improper**

Vu valued Fusion using a discounted cash flow ("DCF") analysis, despite Fusion's history as a mature, long-established company. DCF is appropriate only when historical operations are not indicative of future performance. See Shannon Pratt, *Valuing a Business* (6th ed.).

Fusion operated continuously from 2007 until its dissolution in 2021. Its historical operations are indicative of its future earning potential. By ignoring the capitalization of earnings approach—a more appropriate methodology—Vu biased his analysis. (Muckler Report at 5–7). Ex

**C. Vu's Expense Reduction Assumptions Are Arbitrary and Speculative**

Vu assumes that Fusion's expenses could be reduced by 25%–95% if acquired by a larger company, yielding inflated valuations of $18–20 million. These "efficiency adjustments" are wholly speculative, unsupported by industry data, and contradicted by Fusion's actual financial records, which show overhead consistently around 32% of gross profit. (Muckler Report at 9–11).

Courts reject expert opinions grounded on ipse dixit assumptions and opinions based upon an unverifiable inchoate, "intrinsic value" analysis that Vu has not cited a single published

authority in his support of the use of the DCF. General Electric Co. v. Joiner, 522 U.S. 136, 146 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997), "nothing in either Daubert or Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only be the *ipse dixit* of the expert.

### D. Vu Misuses Comparable and Growth Assumptions

Vu improperly applies EBITDA multiples from Wilhelmina Models, a publicly traded international company with revenues of $75 million in 2019, to Fusion, whose revenues were $5 million. This comparison is unjustified and misleading. (Muckler Report at 13–14). Ex. 3

Vu also applies a perpetual growth rate of 6–8%, far above sustainable industry norms. Long-term growth rates rarely exceed inflation plus population growth (typically 3–4%). His assumptions artificially inflate value. (Id. at 15).

Vu admitted in his deposition that the only reason he used Wilhelmina Models in his valuation is because he simply could not find another company that better matches Fusion. He acknowledged the fact that Wilhemina provides different and additional services and operates at a much more massive scales but chose to ignore that fact and take it as a benchmark regardless. Ex 4 at 53:19-24.

### E. Vu Failed to Investigate the Business or Its Operations and is Unreliable Because it is Based on Incomplete or Incorrect Information.

Vu's expert opinion is unreliable because Vu failed and/or refused to consider directly relevant record information. A vital component to an assessment of the fair market of a privately held company like Fusion, is an understanding the nature of the business and operations. Vu did not interview Fusion's operator, Gordon, and instead relied on incomplete and inconsistent

financials. He did not rely on any fact testimony rendered in this action-including the deposition testimony of Gordon. He ignored material facts about the business model, such as high operational costs for supporting models' housing, travel, and living expenses. His lack of investigation further undermines the reliability of his analysis. (Muckler Report at 7–9).

A key aspect of generating that understanding is reviewing the company's historical performance, management's forecasts or projections, and management's explanations contextualizing each of the foregoing. American Institute of Certified Public Accountants ("AIPCA") , *see also* Daft & Co v. Travelocity.com, 2004 WL 5366732, at *5 (Del. Ch. May 20. 2004) (management "ordinarily has the best first-hand knowledge of a company's operations."). By not interviewing Gordon, his report and testimony confirm that his limited access resulted in an opinion based on incomplete or incorrect information. "[W]hen an expert is opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002).

That is the case here Vu did not only interview Gordon but declined to rely on any of the fact testimony rendered in this action. It was important to interview Gordon who was running the day to day operations of Fusion.

**F. Defendants' Rebuttal Expert Confirms the Flaws in Vu's Methodology**

Heidi Muckler, a CPA and Accredited Business Valuator with extensive litigation experience, identifies numerous methodological errors, including: reliance on intrinsic rather than fair market value, improper application of DCF, failure to use capitalization of earnings, arbitrary expense reductions, improper comparables, and unrealistic growth assumptions. Her rebuttal

confirms that Vu's testimony is unreliable and would not assist the trier of fact. Vu's Market Multiples and EBITDA normalization are cherry-picked to support his opinions, without regard for their meaning and are unreliable. Vu, uses incomparable companies without showing similarity in size, market, or capital structure. His opinion is on selective reliance on comps shows results-driven analysis.

It is clear that Vu improperly relied only on Wilhelmina which is not comparable to Fusion. It is a basic tenant of valuation that when relying on comparable company data, "every effort should be made to select as a broad a base of comparative companies as is reasonably possible, as will as to give full consideration to every possible facto in order to make the comparison more meaningful." See Pratt, Shannon P., et al., *Valuing a Business, The Analysis and Appraisal of Closely Held Companies,* at 274 (5th ed. 2008) (quoting 1542 Central Trust Company v. U.S., 305 F.2d 393, 407 (Ct. Cl. 1962). The calculation of the value of Fusion Vu uses an exit multiple of 3-3x times EBITDA. He only referenced EBITA of Wilhelmina Models. Wilhelmina models is a publicly traded business, with offices in New York, London, Los Angeles and Miami. Wilhelminas' gross revenue for the year end 2019 was over $75 million dollars as compared to Fusion whose gross revenues were over $5 million for the year end 2019. To compare Fusion to an international, publicly traded business is absurd. There is no similarity between the two except that they both deal with models and to apply any multiples from the Wilhelmina business is inaccurate. In fact, earlier in the report on page 3 it is stated that the DCF methodology was selected because there were no publicly traded companies and then applies multiple based upon Wilhelmina.

## **CONCLUSION**

As established by his own deposition testimony, Vu lacks the necessary qualifications, credentials, and experience to competently evaluate Fusion. Rather than applying the Fair Market Value method—the legally recognized standard—Vu relied on an alternative approach that is both inaccurate and inadmissible. His valuation rests on speculative assumptions regarding business growth and an inappropriate comparison of Fusion to Wilhelmina Models, a fundamentally dissimilar entity. This flawed methodology resulted in a distorted valuation that fails to reflect the facts of this case.

These deficiencies are further confirmed by the rebuttal of Vu's valuation prepared by Heidi F. Muckler (Ex. 3), a qualified expert with relevant experience in this field. Accordingly, and for the reasons set forth herein, Defendants respectfully request that the Court grant their motion and exclude the expert testimony of Quan A. Vu in its entirety.

Dated: September 29, 2025
      Brooklyn, New York

Respectfully submitted,

By: /s/ *Maria Patelis*

Maria Patelis, Esq.
Maria Patelis & Associates, PLLC.
7024 18th Avenue
Brooklyn, New York 11204

917-653-7214
m.patelis@aol.com
Attorney for Defendants

Case 1:23-cv-02376-SJB-LKE   Document 72-1   Filed 11/12/25   Page 14 of 14 PageID #: 647