**EXHIBIT 3**

# Rebuttal Report to the

# Valuation of Fusion Modeling Agency

# Prepared by

# Quan A Vu



600 BROADWAY • SUITE A • LYNBROOK • NEW YORK • 11563
516.569.9333 • HEIDI@HFMVALUATION.COM

November 18, 2024

Fusion Modeling Agency
c/o Maria Patelis, Esq.
Maria Patelis & Associates, PLLC
7024 18th Avenue
Brooklyn, NY 11204

Dear Sirs:

## DESCRIPTION OF THE ASSIGNMENT

We were retained to prepare a rebuttal report to the valuation report prepared by Quan A Vu on November 4, 2024. Our report is strictly a rebuttal report and will only address certain issues that we feel were not handled correctly in the valuation report.

## ISSUES REGARDING THE VALUATION

Fusion Modeling Agency  (Fusion) was dissolved on April 30, 2021. The business began in 2007.

The first issue is that the report does not address what is defined as fair market value or fair value (statutory). Fair market value is the most widely recognized and accepted standard of value.

The term fair market value, as used in this report, is defined by the Internal Revenue Service in Revenue Ruling 59-60 (1959-1, C.B. 237) as,

> "the price at which a property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of the relevant facts.

The valuation of a closely held company requires consideration of many factors.  This valuation includes, but is not limited to, a review and analysis of each of the significant areas addressed in Revenue Ruling 59-60, which are established as being fundamental in determining the fair market value of closely held stock, as follows:

Fusion Modeling Agency
November 18, 2024

Page 2

· The nature of the business and the history of the enterprise from its inception.

· The economic outlook in general, and the condition and outlook of the specific industry in particular.

· The book value of the stock and the financial condition of the business.

· The earning capacity of the company.

· The dividend paying capacity of the company.

· Whether or not the enterprise has goodwill or other intangible value.

· Sales of stock and the size of the block of stock to be valued.

· The market price of stock of corporations engaged in the same or a similar line of business having their stock actively traded in a free and open market, either on an exchange or over the counter.

The valuation report prepared by Mr. Vu does not address fair market value. In fact, he states in the report that he has determined Fusion's intrinsic value (page 1). Intrinsic value represents an analytical judgment of value based upon on the characteristics of the investment. Intrinsic value is considered appropriate price for a stock according to a security analyst. The intrinsic value only becomes fair market value when other investors reach the same conclusion. This is not the standard of value to be used when valuing a company for dissolution. Intrinsic value is not fair market value.

The valuation report uses a discounted cash flow method to value a business. The discounted cash flow methodology is only appropriate for valuation when the past operations of the business is not indicative of the future.

The report itself fails to address the other income method of valuation which is the capitalization approach. The capitalization approach methodology assumes that there is a constant annual stream of income in perpetuity. It does not expect future changes of expected income. Shannon Pratt, one of the leaders in the valuation field, states in his book "Valuing a Business" Sixth Edition that if the economic flow is either stable or declining at a fairly even rate, the capitalized economic income method should be used to produce a value. If there are reasons to believe that changes will be significant but unpredictable the discounted economic income method should be used. Looking at the past five years of operations of the business and even prior there is no reason to assume that the past operations is not indicative of the future.

Since the valuator did not discuss the operation of Fusion with Ms. Gordon who is the day to day operator of the business and the sole decision maker rather than her partner who

is not involved with the operation of the business it is impossible to know how he made the decision to use a valuation approach based upon the assumption that a mature company, operating for almost 15 years' income is not representative of what they would earn in the future.

In this case the business is a mature company that has been in operation since 2007. Mr. Vu did not interview Ms. Gordon and does not have an understanding of the operations of the business. He assumed that the past was not indicative of what the business can earn in the future. There is no basis in his report for this assumption.

He makes a statement that Fusion's representation for high end projects ensuring liquidity in a niche market. Again, based upon what facts? A review of the 2019 and 2020 balance would clearly reveal that this business is not liquid.

Again, the report makes a statement that Fusion's diversity serves as a differentiator that attracts premium model and clientele, thereby augmenting its pricing power and reinforcing its status as an industry leader.

In order to value the business, the operation of the business needs to be understood. Fusion is a modeling agency. Fusion will fly models in from all over the world, put them up in apartments, pay for their expenses including rent on the apartment, portfolio, clothing, gym memberships, meals, travel to and from both jobs and potential jobs, gym memberships etc.

The cost of doing business is very high.

When the models do book jobs Fusion will incur expenses for the models on that job, Fusion will then bill the company that the model is working on and bill expenses that they have laid out for that job. The billings are reflected in the accounts receivable of the business. Any money this is owed on the expenses that were laid out by Fusion are reflected in the accounts payable of the business.

When looking at the profit and loss of Fusion it is the gross profit of the business which is most important. The gross profit represents what Fusion earns on actual modeling jobs after the expenses incurred on those jobs before overhead.

Mr. Vu states that the "service mark" which functions as intellectual property embodies significant goodwill and that is a powerful intangible asset. Whether or not this is correct would depend upon if the business made money and someone would be willing to buy just the "service mark" and close the operation of the business. This is the basis of the valuation performed by the expert and is incorrect. As stated above, this is intrinsic value which only relates to fair market value when other investors agree that the intrinsic value equates to fair market value. Intrinsic value can only be used if there is no statutory

standard of value such as fair market value. That is not the case usually in a dissolution action.

On page 4 of the valuation report the valuator discusses that Fusion is a "bolt-on" company. He makes an assumption, which is incorrect, that a bigger company would buy Fusion for its operation. While that might be possible in the future that is not the facts and circumstances in affect as of the date of valuation. Mr. Vu cannot just assume that someone is going to purchase to merge in the operations with their existing business and prepare a valuation based upon his own assumptions of what expenses would be eliminated after the purchase.

When valuing a business for a dissolution action the facts and circumstances in affect as of the date of valuation is all that is to be considered. In essence, that means that the valuator cannot look at what might happen in the future, even if an event does occur.

He has no basis to assume that the larger firm will eliminate expenses that he himself deems as redundant. There is no basis to assume that the legal, accounting and even meals expenses would be eliminated. There is no basis for Mr. Vu stating that a 25% reduction in operating expenses was taken to reflect reasonable, expected efficiency improvements. Based upon what? 25% that he decided?

All he has to do is review the past five years of operation of the business and see that the overhead after the gross profit for the business has been consistently around the 32% mark and that the business has run at a loss or very little profit for the last five years even with excluding the pandemic.

When reviewing the forecast that Mr. Vu prepared look at what he used as the basis for the discounted cash flow methodology. Mr. Vu used the mean of the five years of 2013 – 2019 however what he does not look at is what actually went on with the figures producing EBITDA.

For example,  Ms. Gordon was never on payroll. She did not receive a salary. What she was allowed to do was charge certain expenses to the business in lieu of salary. When valuing a business as stated in Shannon Pratt's valuation book "the reasonableness of compensation in the form of salaries, wages and bonuses is at issue and should be considered in many valuations, particularly small and family owned businesses. Regulation defines reasonable compensation as the "amount that would ordinarily be paid for like services by like organization in like circumstances." The adjustments are made to present the operations of the business as they would be for the prospective buyer. Whoever might purchase this business might not be willing to work for compensation as little as Ms. Gordon is working for. In fact, they would want to know what it would actually cost them to pay an employee to do Ms. Gordon's job. This future salary will cut into the profits of the business and makes the business less valuable since the ordinary income being shown does not reflect "actual" operating expenses.

Besides the above factors in the calculation of the value of Fusion the valuator uses an exit multiple of 3-5x times EBITDA. He references EBITA of Wilhelmina Models. Wilhelmina Models is a publicly traded business with offices in New York, London, Los Angeles and Miami. Wilhelmina's gross revenue for year end 2019 was over $75 million dollars as compared to Fusion whose gross revenues were over $5 million for the year end 2019. To compare Fusion to an international, publicly traded business is absurd. There is no similarity between the 2 except they both deal with models and to apply any multiples from the Wilhemina business is inaccurate. In fact, earlier in the report on page 3 it is stated that the discounted cash flow methodology was selected because there were no publicly available transactions and limited publicly traded companies. Not sure why 2 pages later the report applies multiple based upon Wilhelmina.

The second part of the valuation calculation that is presented is based upon an assumption that the company will grow assuming a perpetual growth rate into the future of 6-8%. There are many articles discussing that an expected long term average growth rate is impossible to sustain if it exceed inflation plus population growth. An error is to use a growth rate without additional capital investment. We are unsure where the valuator obtained the 6-8% growth rate but many valuators believe that the long term sustainable growth should be in the range of 3-4%.

## *CONCLUSION*

In conclusion the report prepared of Fusion Modeling Agency is not a valuation of the business under fair market value and should be disregarded.

Respectfully submitted,

Heidi F. Muckler, CPA/ABV/CFF, CFE, CVA

## HEIDI F. MUCKLER

## CURRICULUM VITAE

Heidi F. Muckler is a Certified Public Accountant, Accredited Business Valuator, a Certified Valuation Analyst, and a Certified Fraud Examiner. Ms. Muckler specializes in business valuations, estate valuations, litigation consulting, forensic accounting, fraud investigations and damage calculations. Ms. Muckler has lectured extensively on valuations and forensic accounting for various organizations.

### Professional Experience:

Valuation of professional practices, partnerships, corporations, sole proprietorships, privately held businesses such as manufacturing companies, construction, plumbing and electrical contractors, service industries, real estate entities and distribution companies for the purpose of equitable distributions, buy/sells, shareholder disputes, estate and gift tax, commercial litigation and fair value cases.

Valuations of medical practices, accounting practice, dental practices, law practices, manufacturing operations of both edible and nonedible products and routes as an example.

Tracing of separate property.

Damage calculations for lost profits, personal injury, malpractice suits, contract disputes and insurance claim.

Tracing of assets in fraud investigations.

Representation of clients in criminal tax litigation, white collar crime cases and stockholder litigation

Valuation of minority interests.

Calculation of property settlements, tax impact of equitable distribution and CSSA.

Forensic Accounting.

Expert witness in New York State Supreme Courts, Federal Courts in the Eastern and Southern Districts of New York and American Arbitration Association.

Appointed as a neutral appraiser by various courts in New York State.

**Education:**

Hofstra University
Master of Business Administration

New York University
Bachelor of Science - Accounting/Management

**Professional Activities:**

Accredited Business Valuator by the American Institute of Certified Public Accountants.

Certified Valuation Analyst by the National Association of Certified Valuation Analysts.

Certified Fraud Examiner.

Member of the American Institute of Certified Public Accountants.

Member of the New York State Society of Certified Public Accountants.

Past President - Long Island Chapter of the Association of Certified Fraud Examiners.

Member of the NYSSCPA Business Valuation Committee.

Past Member of the NYSSCPA Litigation Support Committee.

Lectured on valuation topics for the New York State Society of Certified Public Accountants, New York State Women's Bar Association, New York State Bar Association, Queens County Women's Bar Association, Westchester Women's Bar Association Matrimonial Committee, Nassau County Women's Bar Association Matrimonial Committee, New York City Women's Bar Association Matrimonial Committee, Richmond County Bar Association, various lectures for the National Business Institute, Pace University School of Law, United Jewish Appeal, Estate Planning Counsel of Rockland & Suffolk Countries, Divorce Financial Planning Network and financial planning organizations.

Lectured on fraud & forensic accounting for various groups.

Written articles on Business Valuation for various publications.

Trained in both collaborative law and mediation.