FILED
CLERK

11/12/2025 4:52 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

KEVIN POLLACK,                                                    23 Civ. 02376 (SJB)

     *Plaintiff,*

     -against-

JODIE LOUISE GORDON (also known as JODY
GORDON) and FUSION MODELS BK LLC,

     *Defendants*.

-------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Brian Lehman, Esq.
KASELL LAW FIRM
1038 Jackson Avenue, Suite 4
Long Island City, NY 11101
Attorneys for Plaintiff Kevin Pollack

# Table of Contents

I.   INTRODUCTION..........................................................................................................**2**

II.  STANDARD OF REVIEW.............................................................................................**3**

III. PLAINTIFF'S PROPOSED FACTUAL BACKGROUND .................................................**5**

IV.  SUMMARY JUDGMENT MAY NOT BE GRANTED BASED ON THE
FACTS PRESENTED IN DEFENDANTS' RULE 56.1 STATEMENT ................................**12**

V.   DEFENDANTS' ARGUMENTS FOR SUMMARY JUDGMENT ARE
UNPERSUASIVE ..........................................................................................................**14**

   A. A REASONABLE JURY COULD FIND DAMAGES ...................................................15

   B. JUDICIAL DISSOLUTION DOES NOT EXTINGUISH PLAINTIFF'S

      RIGHTS, BAR THIS COURT'S JURISDICTION, OR DEPRIVE HIM OF

      STANDING TO RECOVER FUSION'S MISAPPROPRIATED ASSETS ...................18

   C. DEFENDANT'S REMAINING ARGUMENT AS TO INDIVIDUAL CLAIMS

      LACK MERIT ........................................................................................................21

   D. SUMMARY JUDGMENT ON ATTORNEY'S FEES SHOULD BE DENIED.............24

V.   CONCLUSION .............................................................................................................**25**

# Table of Authorities

## Cases

*Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986)................................................3

*Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926 (2d Cir. 1977) ...........17

*Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) ..............................4

*Fitzpatrick v. Animal Care Hosp.*, 962 N.Y.S.2d 474, 479 (App. Div. 2013) ..............................17

*Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959) ....................................19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).....................3

*Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001)...........................................................4

*Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 19 (2d Cir. 2000) ...................................17

*Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (1986)..........................................................17

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) ....................................................................................................................19

*Pack v. Artuz*, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004)...............................................................14

*Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000)..............................................................17

*United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)..................................................................4

*Woodman v. WWOR-TV*, Inc., 411 F.3d 69, 75 (2d Cir. 2005) ......................................................5

## Statutes

28 U.S.C. § 1332 ............................................................................................................................19

N.Y. LLC Law § 1102.....................................................................................................................23

## Rules

Fed. R. Civ. P. 56(c) ........................................................................................................................3

Fed. R. Civ. P. 56(c)(2) ..................................................................................................................14

Fed. R. Civ. P. 8(c) ........................................................................................................................13

Fed. R. Evid. 702(a) .......................................................................................................................17

Loc. Civ. R. 56.1(a) ........................................................................................................... 3

Loc. Civ. R. 56.1(c) ........................................................................................................... 4

**Other Authorities**

Restatement (Second) of Torts § 874, cmt. B ............................................................... 23

Plaintiff Kevin Pollack ("Plaintiff" or "Pollack") respectfully submits this Memorandum of Law in Opposition to the Motion for Summary Judgment filed by Defendant Jodie Gordon ("Gordon") and Defendant Fusion Models BK LLC ("Fusion BK").

The accompanying papers submitted herewith include Plaintiff's Counterstatement of Material Facts (Pursuant to Local Civil Rule 56.1(b)) and the following exhibits, each of which is attached to the undersigned counsel's sworn declaration and constitutes a true and accurate copy of the document described:

Exhibit 1 — Plaintiff's Production Pages P_2300, P_2301, and P_2698.

Exhibit 2 — Declaration of Kevin Pollack, dated October 25, 2025 ("Pollack Decl.");

Exhibit 3 — Excerpts from the Deposition of Kevin Pollack, dated April 23, 2025 ("Pollack Dep. Tr.");

Exhibit 4 — Excerpts from the Deposition of Defendant Jodie Gordon, dated October 8, 2024 ("Gordon Dep.");

Exhibit 5 — Expert Report on Valuation of Fusion Modeling Agency LLC as of Judicial Dissolution (April 30, 2021) dated November 4, 2024, and submitted as "Exhibit 2" during Defense Counsel's Deposition of Mr. Quan Vu on June 4, 2025 ("Vu Report");

Exhibit 6 — Excerpts from the Deposition of Plaintiff's Expert Quan Vu, dated June 4, 2025 ("Vu Dep.");

Exhibit 7 — Operating Agreement of Fusion Modeling Agency LLC ("Fusion") (referred to as "Fusion" throughout this Memorandum).

Declaration of Brian Lehman, Esq., Counsel for Plaintiff, dated October 27, 2025.

Because a reasonable jury could find for Plaintiff Kevin Pollack against Defendants Jodie Gordon and Fusion Models BK LLC, it is respectfully submitted that Defendants' motion for summary judgment should be denied.

## I.    INTRODUCTION

This motion is not about whether Fusion Modeling Agency LLC ("Fusion") should have been dissolved in 2021—it is about what happened next. After securing judicial dissolution, Defendant Jodie Gordon failed to liquidate Fusion's core intangible assets "as promptly as is consistent with obtaining the fair value thereof," as Article 8.2 of the Operating Agreement requires, and failed to make liquidating distributions within ninety (90) days as Article 8.3 mandates. Instead, she continued the same business through Fusion Models BK LLC ("Fusion BK"), appropriating Fusion's trade name, website, branded email system, Instagram handle, telephone number, and goodwill—without compensating Plaintiff Kevin Pollack for his 35.222% membership interest.

The record presents classic jury issues. Pollack's testimony—corroborated by business records and Gordon's own admissions—shows these assets had substantial, realizable market value and were saleable within a short post-dissolution window. Gordon's continued exploitation of Fusion's brand and digital platform through Fusion BK supports liability for breach of contract, breach of fiduciary duty, statutory violations under New York law, and related claims, and it supports damages measured by the fair value of the diverted assets and Pollack's resulting loss.

Defendants try to sidestep these disputes by (i) treating the dissolution order as if it adjudicated ownership and value (it did not), (ii) recasting Article 8's liquidation mandate as a license to appropriate assets (it is not), and (iii) asserting "no damages" despite evidence of substantial value and ongoing commercial use of Fusion's assets. None of Defendants' arguments have merit.  The simple fact is that on this record, a reasonable jury could find that Gordon violated the Operating Agreement and her fiduciary duties during winding up, that she breached statutory

and common-law obligations, and that Fusion BK is liable as a participant and beneficiary of the diversion.

Respectfully, summary judgment should be denied.

## II.    STANDARD OF REVIEW

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). For this reason, the Court must draw any permissible inference from the underlying facts in the most favorable light to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c)(1)(A). Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* R. 56(c)(1)(B).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)-(b). In both instances, the party must support its position by citing to admissible evidence from the record. *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record

in supporting or controverting a purported material fact). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994).

The court may not grant summary judgment based on a fact in a Rule 56.1 statement— even if undisputed—not supported by admissible evidence. *See, e.g.*, Giannullo v. City of New York, 322 F.3d 139, 142-43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence). The Court must also disregard conclusory denials that lack citations to admissible evidence. *See Rodriguez v. Schneider*, No. 95 Civ. 4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("Rule 56.1 statements are not argument. They should contain factual assertions, with citation to the record. They should not contain conclusions[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003). Where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted." Loc. Civ. R. 56.1(c).

The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits. *See Pacenza v. IBM Corp.*, 363 F. App'x 128,

130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05 Civ. 5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party `must set forth specific facts showing that there is a genuine issue for trial;' he or she `may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), aff'd, 324 F. App'x 139, 143 (2d Cir. 2009).

## III.    PLAINTIFF'S PROPOSED FACTUAL BACKGROUND

The evidence, when read in the light most favorable to Plaintiff, shows the following. Plaintiff Kevin Pollack ("Pollack") is a 35.222 percent member and co-founder of Fusion Modeling Agency LLC ("Fusion"), a New York limited liability company formed on December 7, 2006, to operate a high-fashion modeling agency in New York City. ¶¶1, 40.[1] After its inception, Fusion conducted business in interstate and international commerce through its distinctive trade name, trademarks, and digital properties—including the domain www.fusionmodelsnyc.com, its branded email addresses, the Instagram account @*fusionmodelsnyc*, and its telephone number (212) 675-1300. ¶¶10-14. Defendant Jodie Gordon ("Gordon") served as Fusion's managing member and oversaw day-to-day operations, while remaining bound by the Operating Agreement during Fusion's existence and following its judicial dissolution. ¶3; *see also* Ex. 7 (Article 8.2-8.3 of Operating Agreement pertaining to dissolution of the limited liability company).

Over the next fifteen years, Fusion established itself as a prominent agency with models from across the world and well-regarded clientele. ¶41. From 2006 onward, the limited liability

---

[1] ¶¶__ refers to the paragraphs in Plaintiff's Counterstatement of Material Facts submitted under Local Civil Rule 56.1(b).

company continuously used the word "Fusion," together with its website (www.fusionmodelsnyc.com), its name, and its telephone number (212) 675-1300 on contracts, invoices, model cards, and digital communications to identify its services and distinguish itself within the modeling industry. ¶13 (continuous use of trade name). By 2010, the Fusion brand appeared in publications and across social-media platforms promoting its models and clients. ¶15 (public recognition and use in commerce).

Fusion functioned as "a market maker" within the modeling industry by facilitating transactions between diverse models from across the world and clients seeking representation for end projects, thereby ensuring liquidity and receiving a premium for the clients hiring the models. ¶¶42, 50. Fusion's business model created value through network effects on both sides of the market—models and clients—which is why its brand and digital platforms were the core economic drivers. ¶¶42, 50. Fusion's business model created value through network effects on both sides of the market—models and clients—which is why its marks (*e.g.*, its brand name and website) and digital platforms were the core economic drivers. ¶¶42, 50. By matching supply (models) with demand (clients), Fusion provided liquidity to a fragmented market and earned a premium for facilitating those transactions: models sought out Fusion because it had established relationships with clients, and clients turned to Fusion because it maintained a diverse roster of professional models—all of whom connected and transacted by and through Fusion's digital assets, including its website, email system, and social-media platforms. ¶¶42, 50; *see also* Ex. 6, Vu Report at 3–5.

On or about October 11, 2007, Fusion registered www.fusionmodelsnyc.com as its official website and began using it for client communications, model portfolios, and booking inquiries. ¶14 (website registration). Gordon herself confirmed that Fusion "had a website" and "always had

the same phone number … 212-675-1300," demonstrating her control and awareness of Fusion's core commercial assets. ¶¶11, 18 (admissions by Gordon).

In May 2017, Fusion relocated its offices to 101 North 10th Street, Suite 301, Brooklyn, New York 11249, as part of a rebranding initiative. ¶16. That same Brooklyn address remains the office location of Gordon and her successor entity, Fusion Models BK LLC. ¶17 (continuing the same address). The following month, in June 2017, Fusion introduced a stylized logo displaying the word "FUSION" in a tall, high-contrast sans-serif typeface with closely spaced letters that appeared "fused" together, a distinct visual identifier used in commerce to represent the agency (*Id.* ¶19) (adoption of stylized logo). A true and accurate copy of that logo appears on Fusion's website as archived by the Internet Archive in July 2017 (¶20) (referring to the Internet Archive, https://web.archive.org).

Fusion's service marks are powerful intangible assets providing a competitive advantage. The costs of building such marks creates barriers to entry for potential competitors and allowed Fusion to command a premium in contractual negotiations. Indeed, Defendant Gordon sent in an email to Plaintiff in 2014 which stated: "Strong platform in place (took 10+ years to build) from which can rapidly grow to next level (i.e. increase growth rate of revenues/profits)" and it "[w]ould be very difficult to build comparable platform and reputation from scratch in the current competitive environment; better return from investing in strong." Ex. 1, P_2300-2301. Fusion's well-known mark and brand name, and the substantial cost and time associated with recreating a brand that would allow models from across-the-world to connect with companies seeking to hire them for projects, operates as an economic moat protecting its market share and ensuring long-term profitability. ¶¶45, 50.

On June 26, 2020, Gordon sent Pollack an email from *jody@fusionmodelsnyc.com* with the subject line "Business Opportunity – Investment with Fusion," describing Fusion as a "respected high fashion business" and a "leading boutique modeling agency," listing luxury-brand clients and seeking investments "not under $500,000 … ideally $1 million or more" ¶21. That solicitation confirmed that as of mid-2020 (less than a year before the events that caused this action) Fusion remained active, profitable, and possessed significant goodwill and industry standing. ¶22.

Less than one year later, on May 3, 2021, the Supreme Court of Kings County entered an order judicially dissolving Fusion. ¶5 (dissolution order). Article VIII of the Operating Agreement states in relevant part:

ARTICLE VIII
DISSOLUTION

8.1 Dissolution. The Company will be dissolved and its affairs will be wound up upon the earliest to occur of the following: . . . .

8.1.4 Any other event which is specified in this Agreement *or the entry of a decree of judicial dissolution pursuant to the Law*.

8.2 Winding Up. Upon the occurrence of any event specified in Section 8.1, *the Managing Members will take full account of the Company's liabilities and assets, and the Company's assets will be liquidated as promptly as is consistent with obtaining the fair value thereof*. The proceeds from the liquidation of the Company's assets will be applied and distributed in the following order . . . .

8.3 Timing of Liquidating Distributions. *Liquidating distributions will be made by the end of the taxable year in which the liquidation occurs or, if later, within ninety (90) days of the liquidating event* and will otherwise comply with Regulations Section 1.704-1(b) . . . .

Ex. 7 (Operating Agreement, Art. 8) (emphasis added)

Gordon did not liquidate the company's assets "*as promptly as is consistent with obtaining the fair value thereof*" or provide liquidating distributions within the ninety (90) days required by

Article 8.3 of the Operating Agreement; instead, she formed a new entity—Fusion Models BK LLC—and continued using Fusion's trade name, domain, and digital assets to carry on the same business from the same Brooklyn address. ¶¶17–18, 24, 26–27. Gordon has acknowledged, "You're aware of my Fusion Models BK," confirming her ownership and control of the successor company. ¶18 (Gordon admission regarding Fusion BK); *see also* Ex. 4, Gordon Dep. at 16.

Fusion's assets were never sold but rather they were used and continue to be used by Gordon and the new entity Gordon formed after dissolution, Fusion BK. ¶¶27-34. Throughout this litigation and as of October 24, 2025, the Instagram account *@fusionmodelsnyc* remained active with approximately 122,000 followers and 5,111 posts listing Fusion's Brooklyn office address and phone number. ¶28 (status of Instagram account). The account cross-links to *@fusiontalentbk*, which describes itself as "a globally connected agency … Established 2023, Brooklyn NY," *i.e.*, Fusion Models BK LLC (which was formed in November 2023) and displays on *@fusiontalentbk* the very same logo that Fusion introduced in 2017. ¶29.

Gordon's Instagram account *@jodiejouisegordon* lists *jody@fusionmodelsnyc.com* and links directly to both *@fusionmodelsnyc* and *fusionmodelsnyc.com*, evidencing her continued use of Fusion's marks and contact information. ¶3. The website www.fusionmodelsbk.com automatically redirects immediately to www.fusionmodelsnyc.com, which displays the same logo, business address, and telephone number. ¶32 (domain redirection).

The site's design, layout, and trade dress remain identical to those used prior to dissolution and link directly to *@fusionmodelsnyc*, confirming that Defendants have continued to exploit Fusion's established marks, goodwill and digital infrastructure for ongoing commercial gain. ¶33. The continued use of Fusion's domain, marks, and phone number demonstrates the ongoing operation of the same business under a different LLC, as those intangible assets constitute the core

channels through which the agency connects models and clients and thereby receive its premium revenue. ¶47.

Additional evidence further establishes the substantial value of Fusion's assets that are being used by Defendants. In April 2020, Gordon told Pollack that Fusion's gross revenue was $4 million and that accountant Brett Randle valued the company at "four-to-five times" that amount, consistent with a $16 to $20 million valuation. ¶35. In 2014, Fusion's valuation according the company's own internal valuation was approximately $10 million, and by 2021 its value would have doubled at a 9.9 percent continuous annual growth rate– a reasonable growth rate for a successful company internally valued at $10 million in 2014.[2]

Pollack—who served as Fusion's advisor on financial matters from 2006 through 2021—has direct, personal knowledge of the company's finances and operations. ¶40. Drawing on that experience, Pollack explained in his declaration that Fusion's intangible assets—its trade name, marks, domain, email system, social-media accounts, and goodwill—could have been sold for approximately $16 million within ninety days of dissolution. ¶48.

Pollack personally participated in a 2020 phone call with Gordon in which she confirmed that Fusion's gross revenue was $4 million, and that accountant Brett Randle valued the company at "four-to-five times" that amount—placing Fusion's value between $16 and $20 million. ¶35. This estimate is consistent with Pollack's independent calculation that Fusion's $10 million valuation in 2014 would have doubled by 2021 at a 9.9 percent continuous annual growth rate. ¶39. An agency acquiring Fusion's assets could have eliminated overlapping expenses, thereby realizing an effective valuation between $11 million and $20 million. ¶49.

---

[2] ¶39 (citing P_2300, " . . . . On Fri, Dec 05, 2014 at 01:19 PM, Jody Gordon wrote: "Investment of no less than $2M in Fusion NYC for 20% of Fusion NYC . . . .").

Pollack testified that Fusion's intangible assets could have been sold "possibly within a couple of weeks, maybe faster … but certainly not six months, or a year, or never," underscoring both the liquidity and desirability of its brand. ¶34; *see also* Ex. 2, Pollack Dep. Tr. at 183–184. His valuation aligns not only with the assessment of Brett Randle, Fusion's accountant, in the summer of 2020 but also with expert Quan Vu's independent analysis, which placed Fusion's value at up to $20.5 million when post-acquisition efficiencies were taken into account. ¶49; *see also* Vu Expert Rep. at 3–6.

Fusion operated as a "market maker" in the modeling industry, connecting models worldwide with clients and capturing a premium spread between client fees and model commissions. ¶50. Its value derived not from tangible property but from its brand, reputation, and digital network—the very elements that produced recurring global business and made Fusion's platform uniquely valuable. ¶50. An acquiring agency could have seamlessly integrated Fusion's client list, brand, and social-media presence into its operations while eliminating redundancies, achieving immediate revenue growth. ¶50. The company's name, website, and online presence—including the @fusionmodelsnyc Instagram account—were the engines that generated its traffic, inquiries, and revenue, and those assets could have been monetized in under ninety days. ¶50.

Fusion's intangible assets—its goodwill, digital footprint, and service marks—were the primary source of its economic value and could have commanded eight-figure consideration in a competitive sale after judicial dissolution. ¶51. When viewed in the light most favorable to Plaintiff, as required on summary judgment, the record amply supports that these assets possessed substantial and readily realizable market value at the time of judicial dissolution—value that Gordon and Fusion BK have wrongfully diverted for their own benefit. ¶¶24, 27, 33–34, 37–40.

IV.    **SUMMARY JUDGMENT MAY NOT BE GRANTED BASED ON THE FACTS PRESENTED IN DEFENDANTS' RULE 56.1 STATEMENT**

Defendants Gordon and Fusion BK bear the initial burden of identifying specific evidence in the record and presenting undisputed material facts that no reasonable jury could return a verdict in Plaintiff's favor. Defendants' nine undisputed facts in their Rule 56.1 statement fall far short, and summary judgment should be denied for this reason alone.

Plaintiff does not dispute the first seven paragraphs of Defendants' Rule 56.1 statement, but those paragraphs merely describe background matters—the formation, membership, management, and dissolution of Fusion Modeling Agency LLC ("Fusion"). None bears on any element of Plaintiff Pollack's claims for the following:

> (1)  Breach of Contract (Against Gordon) — Compl. ¶¶ 64–70;
>
> (2)  Tortious Interference with Contract (Against Fusion Models BK LLC) — Compl. ¶¶ 71–77 (available at DE 1);
>
> (3)  Breach of Fiduciary Duty (Against Gordon) — Compl. ¶¶ 78–82;
>
> (4)  Inducement of Breach of Fiduciary Duty (Against Fusion Models BK LLC) — Compl. ¶¶ 83–90;
>
> (5)  Violation of New York Limited Liability Company Law § 1102(b) and Operating Agreement (Against Gordon) — Compl. ¶¶ 91–99;
>
> (6)  Demand for Equitable Accounting (Against Gordon) — Compl. ¶¶ 100–103; and
>
> (7)  For an Award of Attorneys' Fees (Against Gordon) — Compl. ¶¶ 104–106.

Facts 1–3 merely confirm that Fusion was organized in 2006, identify its initial members, and describe Ms. Gordon's role as managing member. Those admitted facts are immaterial to any claim or defense. Facts 4–5 show that Ms. Gordon obtained judicial dissolution but do not address whether she complied with her contractual, fiduciary, and legal duties in transferring Fusion's assets to her successor entity, Fusion BK.

Fact 6 references an arbitration that was closed after Defendants failed to pay fees. That procedural event is irrelevant; no motion to compel arbitration is pending, and Defendants have waived any such right through their protracted participation in this litigation. *See Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1712 (2022); *Deng v. Frequency Electronics, Inc.*, 640 F. Supp. 3d 255, 263 (E.D.N.Y. 2022); *Herrera v. Manna 2d Ave. LLC*, 20 Civ. 11026, 2022 WL 2819072, at *7 (S.D.N.Y. July 18, 2022). Indeed, Defendants waived arbitration by failing to aver it as an affirmative defense as required by Fed. R. Civ. P. 8(c), thereby depriving Plaintiff of notice.

Fact 7 states that the dissolution order contained no liquidation directive. That assertion does not relieve Ms. Gordon of her express duties under the Operating Agreement, her fiduciary obligations arising from her position of trust in liquidating the assets and distributing the proceeds, or her responsibilities under statutory and common law. Whether her unilateral asset transfer to a new company she formed, Fusion BK, satisfied those duties presents a factual dispute, and a reasonable jury could find that she violated the Operating Agreement and fidicuary duties and caused harm to Plaintiff by keeping the assets for herself and the new company she formed.

Because none of these seven undisputed facts negates an element of Plaintiff's claims— and because all reasonable inferences must be drawn in Plaintiff's favor—Defendants are not entitled to summary judgment.

Defendants' remaining contentions—that Plaintiff received K-1s and tax records— likewise fail. They rely solely on "Exhibit D," a 15,000-page document production, without identifying a single specific page. Rule 56(c)(1) of the Federal Rules of Civil Procedure requires citation to "particular parts of materials in the record," not blanket references to an entire production. Nor have Defendants shown that the exhibit is admissible. No affidavit authenticates it or provides a business-records foundation, which is impossible for the entire production.

Documents merely "produced in discovery" are inadmissible hearsay if offered for their truth. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

Because Defendants provide no competent evidence supporting paragraphs 8 and 9 of their statement, those assertions cannot be considered. A court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—that is not supported by admissible evidence. *See Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003); *Pack v. Artuz*, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004).

Yet, even if those two factual assertions were undisputed, and even if the Court were to grant full weight to all nine facts proposed by Defendants in Defendants' favor (which is the opposite of reading them in the light most favorable to Plaintiff), summary judgment would still be unwarranted. A reasonable jury could find in Plaintiff's favor because none of these facts forecloses Plaintiff's claims against either Defendant—Jodie Gordon or Fusion Models BK LLC— nor eliminates the possibility that Gordon breached the Operating Agreement and her fiduciary duties, or that Fusion BK participated in or benefited from the unlawful diversion of Fusion's assets causing compensable harm to Plaintiff.

## V.    DEFENDANTS' ARGUMENTS FOR SUMMARY JUDGMENT ARE UNPERSUASIVE

Turning to Defendants' Memorandum of Law, it is clear that they have not carried their Rule 56 burden. Their memorandum largely ignores the record—citing no portions of their own Local Rule 56.1 statement and relying on only two exhibits.  Viewing the evidence in the light most favorable to Plaintiff, as the Court must, there exists genuine disputes exist as to damages, post-dissolution misconduct, and the continuing effect of the Operating Agreement and New York law.

The motion should be denied.  As explained below, a reasonable jury could find substantial damages based on the value of Fusion's monetizable brand and digital assets and Defendants' continued exploitation of them. Moreover, judicial dissolution neither extinguished Plaintiff's rights nor divested this Court of jurisdiction; the claims arise from Gordon's post-dissolution breaches and Fusion BK's participation. Finally, Defendants' remaining arguments about each claim rest on misreadings of Article VIII and ignore factual disputes about Gordon's self-dealing, Fusion BK's role, and Plaintiff's statutory and equitable claims. The sections that follow address each point in turn.

## A.  A REASONABLE JURY COULD FIND DAMAGES

Defendants' first argument—that there are "no damages"—is unfounded. A reasonable jury could readily find that Fusion possessed, and Defendants misappropriated, substantial monetizable assets. For fifteen years, Fusion operated as a successful modeling agency engaged in interstate and international commerce through its trade name, website (www.fusionmodelsnyc.com), Instagram account (@fusionmodelsnyc), branded email system, and telephone number (212-675-1300). These digital and branding assets—together with Fusion's marks, goodwill, and client relationships—were its most valuable property, serving as the principal channels through which Fusion connected models and clients and earned premium commissions.

The record contains ample evidence of that value. Pollack's declaration and supporting documentation establish that by 2020–2021, Fusion maintained an established brand with consistent annual revenues around $4 million and a fair-market valuation between $16 million and $20 million. Gordon herself acknowledged that Fusion had a "strong platform … very difficult to build comparable platform and reputation from scratch," conceding the substantial worth of its intangible assets that gave the company an economic "moat" from competitors. Expert Quan Vu

independently valued the same digital and brand assets within that range, finding that they would yield significant post-acquisition efficiencies to an acquiring agency. *See* Ex. 5.

Following judicial dissolution, however, Gordon failed to liquidate Fusion's assets within ninety (90) days as required by Article 8.2-8.3 of the Operating Agreement. Instead, she formed a new entity—Fusion Models BK LLC or "Fusion BK"—at the same Brooklyn address and continued using Fusion's name, logo, website, Instagram account, and phone number. The @fusionmodelsnyc account, with more than 122,000 followers, remains active and cross-links to @fusiontalentbk, the successor company. Likewise, www.fusionmodelsbk.com redirects directly to www.fusionmodelsnyc.com, which retains the same trade dress (including digital photos), address, and contact information.

A reasonable jury could therefore conclude that Defendants appropriated Fusion's core intangible assets—its marks, goodwill, and online presence—without compensating Pollack, depriving him of the fair-market value of his 35.222% membership interest. Pollack testified that these assets could have been sold "within a couple of weeks, maybe faster," demonstrating their liquidity and real market value. Even absent expert testimony, jurors may rely on their own experience in assessing the value of a long-established brand and digital platform. The record thus presents a classic triable issue of fact on damages, precluding summary judgment.

Defendants' assertion that Plaintiff cannot prove damages without expert testimony also misstates New York law. Even if Plaintiff's expert were excluded, damages need not be proven with mathematical precision. Courts have long held that when injury is shown but the exact amount is uncertain, "it would be a perversion of fundamental principles of justice to deny all relief … and thereby relieve the wrongdoer from making any amend for his acts." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931).

16

The purpose of an expert witness is merely to assist the trier of fact in understanding technical evidence. *See* Fed. R. Evid. 702(a). Here, the question on damages for the jury is not one of technical complexity but one of valuation based on the company's established performance and continuing use of its assets—matters well within a lay jury's competence. Moreover, the expert in this case is only presented to explain how one might use the discount cash flow method to value the assets that Fusion could have liquidated in 2021 once Fusion was judicially dissolved. There are other ways to determine the value of the assets and the jury will be free to determine damages based on the evidence and its own common sense.

Under New York law, damages must be proven with "reasonable certainty," not exactitude. *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (1986); *Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000). The standard requires only competent, non-speculative evidence permitting a fair and rational estimate of loss. *See Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 19 (2d Cir. 2000); *Fitzpatrick v. Animal Care Hosp.*, 962 N.Y.S.2d 474, 479 (App. Div. 2013). The rule strikes a balance—preventing conjectural awards while ensuring that genuine losses are not left uncompensated. *See Schonfeld*, 218 F.3d at 172.

"[U]nder the long-standing New York rule, ***when the existence of damage is certain, and the only uncertainty is as to its amount, the plaintiff will not be denied a recovery of substantial damages***." *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926 (2d Cir. 1977) (emphasis added). Measured against this standard, Defendants' argument fails. Plaintiff was certainly damaged – the only question is to what extent. The issue is not whether Plaintiff can quantify his damages to the penny, but whether he offers competent, reliable evidence from which a factfinder can make a just and reasonable approximation of loss. He has done so, and summary

judgment must therefore be denied as the argument that no reasonable jury could find damages of any amount has no merit.

### B. JUDICIAL DISSOLUTION DOES NOT EXTINGUISH PLAINTIFF'S RIGHTS, BAR THIS COURT'S JURISDICTION, OR DEPRIVE HIM OF STANDING TO RECOVER FUSION'S MISAPPROPRIATED ASSETS

Defendants' assertion that the Kings County dissolution order bars Plaintiff's claims fundamentally misrepresents the scope of that proceeding and the nature of the relief sought here. The state-court's Order entered under N.Y. Limited Liability Company Law § 702 simply dissolved Fusion Modeling Agency LLC. It did not determine the ownership, disposition, or value of Fusion's assets; nor did it extinguish the fiduciary and contractual obligations owed by Defendant Gordon in the winding-up process. Those duties—explicitly preserved Article 8.2-8.3 of Fusion's Operating Agreement—survived dissolution.

Plaintiff's claims arise from Gordon's conduct after dissolution, both personally and through Fusion Models BK LLC (of which she is the only member): Her misappropriation and continued use of Fusion's trade name, website, social-media accounts, and goodwill, and her failure to liquidate or distribute those assets as required by Article VIII of the Operating Agreement. None of these issues were before the Kings County court. The dissolution petition sought only dissolution itself; it did not adjudicate ownership of Fusion's intellectual property, authorize any transfer of its marks to Fusion BK, or terminate Plaintiff's 35.222 percent interest.

This action therefore does not collaterally attack the dissolution order—it enforces rights that arose because of Gordon's post-dissolution breaches. Misconduct occurring during winding up and after judicial dissolution—particularly diversion, conversion or theft of company property—is plainly actionable.

Defendants' reliance on abstention doctrines is equally misplaced. Abstention is an affirmative defense that may be waived if not pleaded. *See Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 517 (1st Cir. 2009) ("abstention is a waivable defense"). Defendants never asserted abstention in their Answer and Plaintiff had no notice of these arguments. *See* Docket Entry ("DE") 12. These arguments are waived for this reason alone

In any event, diversity jurisdiction under 28 U.S.C. § 1332 is undisputed, and the Kings County proceeding concluded years ago. There is no concurrent state proceeding involving the same parties or issues that could justify *Colorado River* abstention. *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) ("abstention is generally disfavored"). The state proceeding seeking dissolution was a narrow summary process resolved in 2021; this federal action, filed in 2023, seeks damages and equitable relief for conduct that occurred afterward.

*Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25 (1959), permits abstention only in the narrow circumstance where (i) state law is genuinely uncertain and (ii) the issue is of "special" or "substantial" public importance (there, municipal eminent domain). Neither condition exists here. The questions here are routine and private – whether a managing member breached an operating agreement and fiduciary duties in winding up an LLC and diverted assets, and whether the new LLC formed after judicial dissolution participated in those breaches. Where state law is settled—or at most garden-variety—*Thibodaux* does not apply. Indeed, even if some questions were uncertain, the appropriate tool is certification to the New York Court of Appeals. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716–23 (1996) (abstention is exceptional).

Dismissal on forum-non-conveniens grounds requires the defendant to (1) identify an adequate alternative forum, and (2) show that the balance of private and public interests "strongly

favors" dismissal despite the deference owed to the plaintiff's forum choice. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 255 (1981); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70–74 (2d Cir. 2001). Defendants make neither showing.

There is no pending, parallel case in state court; the dissolution matter ended in 2021 and did not address ownership, valuation, or disposition of assets. Moreover, this Court routinely applies New York contract and fiduciary law; and there is no foreign law, treaty, or administrative regime at issue. See *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947); *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (heavy burden on movant; strong deference to a domestic plaintiff's chosen forum).

In short, there is no regulatory scheme (*Burford*), no uncertain, sovereign-level policy question (*Thibodaux*), and no compelling convenience showing (*forum non conveniens*). The Court should exercise what has often been called its "virtually unflagging obligation" to adjudicate the case before it. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817-18 (1976).

Finally, Defendants' contention that dissolution deprived Plaintiff of standing misstates both New York law and Fusion's Operating Agreement. Under N.Y. LLC Law §§ 703-704, members are to wind up the affairs of the company which, of course, includes complying with the Operating Agreement's requirements governing liquidation and distribution. Pollack—a 35.222 percent member of Fusion—plainly qualifies. His claims for breach of contract, breach of fiduciary duty, and accounting seek to vindicate his individual ownership and rights arising under the contract and New York law, not derivative injuries to the LLC. When a managing member (or indeed anyone) misappropriates company assets or deprives a member of their rightful distribution, the harm is direct, personal, and actionable and the member has standing to sue.

20

### C.  DEFENDANT'S REMAINING ARGUMENT AS TO INDIVIDUAL CLAIMS LACK MERIT

Defendants' remaining arguments concerning the specific causes of action misstate the record and disregard the governing law. Each challenged claim presents genuine disputes of material fact concerning Defendant Gordon's conduct during the dissolution and winding-up of Fusion, her creation and operation of Fusion BK, and her ongoing misuse of Fusion's assets. A reasonable jury could readily conclude that Gordon breached the Operating Agreement, violated fiduciary duties, and deprived Plaintiff of his share of Fusion's value.

Defendants' contention that Gordon complied with Article VIII of the Operating Agreement is unsustainable and certainly not supported by their nine proposed facts in the 56.1 Statement. Article 8.2 required the Managing Member to "take full account of the Company's liabilities and assets" and to liquidate those assets "as promptly as is consistent with obtaining the fair value thereof." Article 8.3 states that the "[l]iquidating distributions will be made by the end of the taxable year in which the liquidation occurs or, if later, within ninety (90) days of the liquidating event," which includes judicial dissolution. In short, Gordon had 90 days to liquidate Fusion's assets and distribute the proceeds.

The record shows Gordon did not liquidate Fusion's core assets—its service marks, trade name, website, domain, social-media accounts, and goodwill—but instead transferred and used them personally and through her new entity, Fusion BK, without compensation to Plaintiff. That conduct is not "liquidation," but conversion and self-dealing – if not outright theft. Nothing in Article 8 or the dissolution order authorized Gordon to appropriate those assets or continue the business under a new entity (*i.e.*, Fusion BK).

Defendants' assertion that "nothing in § 8.2 requires immediate liquidation or prohibits transfer" misreads the clause. The obligation to liquidate "as promptly as is consistent with

obtaining the fair value" means assets must be sold or distributed for fair consideration—not privately transferred to a successor entity controlled by the managing member. Whether Gordon's actions satisfied that standard is a question of fact for the jury and, based on the evidence before this Court, a reasonable jury could easily find in Plaintiff's favor.

As to damages, Defendants' claim that Plaintiff "relies solely" on an excluded expert is inaccurate. Plaintiff's damages are supported by Kevin Pollack's own testimony and declaration, based on his personal knowledge as Fusion's financial advisor from 2006 to 2021, his valuation experience, and the corroborating business records. Even without expert testimony, a reasonable jury could assess the fair value of Fusion's assets using its own experience and common sense while assessing Plaintiff's credibility and testimony.

Defendants also misstate the "third-party" rule. It is true a party cannot tortiously interfere with its own contract. But Fusion Models BK LLC ("Fusion BK") is a separate legal entity from the parties to the Operating Agreement (Pollack and Gordon vis-à-vis Fusion Modeling Agency LLC). Fusion BK was formed only after Fusion's dissolution. Plaintiff alleges that Fusion BK—acting through Gordon—induced and then profited from Gordon's breach of the Operating Agreement governing Fusion and its members by continuing to exploit Fusion's service marks, goodwill, reputation, and digital assets (including the domain name). Corporate separateness matters: a distinct entity—even if wholly owned or controlled by the breaching party—can be liable where it facilitates, induces, or benefits from that breach.

Defendants concede that Gordon owed fiduciary duties as managing member and the person reasonable for liquidating assets under Article 8.2 but argue that her conduct was "authorized" by the Operating Agreement. That argument fails because contractual authority does not excuse self-dealing or bad faith. Gordon's use of Fusion's service marks, goodwill and brand

22

for her own company after dissolution constitutes classic fiduciary misconduct—self-appropriation of corporate opportunities and diversion of assets.

Nor is the fiduciary-duty claim duplicative. It arises from Gordon's post-dissolution self-dealing, not from a mere failure to perform the contract. *See EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 20-23 (2005) (fiduciary-duty claim not duplicative where it arises from extra-contractual misconduct). Liability arises on this claim not out of the contract, but rather out of the special relationship between the person directed to liquidate the assets at fair value in ninety days (clearly, a position of higher trust) and the other members of the LLC. *See id.* at 19-20 (quoting Restatement (Second) of Torts § 874, cmt. B (Am. L. Inst. 1979)). Likewise, if the jury finds that Fusion BK knowingly participated in the misappropriation of Fusion's assets and goodwill (through Fusion BK's agent, Defendant Gordon), it can be held liable for aiding and abetting or inducing that breach.

Defendants' argument concerning N.Y. LLC Law § 1102(b) likewise fails. Section 1102(b) guarantees each member access to true and full information regarding the LLC's affairs. Plaintiff repeatedly requested records—including bank statements, invoices, and client lists—but Gordon refused or delayed providing them until compelled in discovery. The belated production of 15,000 pages during litigation does not retroactively cure a statutory violation. Whether that failure was "reasonable" is for the trier of fact to determine. Moreover, it is clear that the 15,000 pages are not complete but obviously constitute an incoherent "document dump" meant to cover Defendants' malfeasance.

Finally, Plaintiff's equitable accounting claim is far from moot based on the record before the Court because a live controversy persists over (i) what assets of Fusion existed at dissolution (including the service marks, domain, website, social-media handles, client lists, and goodwill),

(ii) how Defendant Gordon controlled, used, or transferred those assets post-dissolution (including to Fusion Models BK LLC), and (iii) what profits, proceeds, or other benefits must be traced, valued, and distributed. New York law recognizes an equitable accounting where a fiduciary or confidential relationship exists, the defendant had control of the relevant records or assets, legal remedies are inadequate, and a demand was made and refused. Those elements remain in dispute

Partial document productions or revenue snapshots do not moot an accounting; only a complete, court-supervised reckoning that traces assets and profits satisfies the equitable right. Finally, even if legal damages are also sought, the accounting is not duplicative or moot; it supplies the very information necessary to compute distributions and measure profits from the post-dissolution exploitation of Fusion's assets, which a jury cannot reliably assess without a fiduciary reckoning. In short, because the fiduciary duties during winding up persist, records and proceeds remain under Gordon's control, and effective equitable relief can still be granted, the accounting claim presents a concrete, live dispute and is not moot.

### D.  SUMMARY JUDGMENT ON ATTORNEY'S FEES SHOULD BE DENIED

Finally, there is no basis to dismiss Plaintiff's claim for attorney's fees at this stage. A prevailing-party fee provision like § 9.11 of the Operating Agreement provides a remedy that follows the merits. If Plaintiff prevails on his claims, § 9.11 entitles him—as the prevailing party—to seek reasonable attorneys' fees; if Defendants prevail, they may seek fees. Who "prevailed" (and to what extent) is determined after liability is resolved based on overall success, not at summary judgment and certainly not by presuming Defendants will win.

Separately, Defendants' reference to "$80,000 in attorneys' fees" lacks any evidentiary support in this record; it is a strikingly round figure that reads as conjecture, not competent proof, and there is no way for the Court to determine if it is reasonable.  Moreover, Defendants have not

moved for summary judgment on their own § 9.11 counterclaim, nor have they presented evidence or argument establishing their entitlement to judgment on that claim. At most, the fee issue should be reserved for post-judgment application. Because § 9.11 is enforceable and applies to this member-versus-member dispute (as Defendants conceded), Defendants' request to dismiss the Seventh Claim should be denied, with any fee determination deferred until after the merits are decided.

## V.    CONCLUSION

For all these reasons, summary judgment must be denied. The record—when viewed as Rule 56 requires—presents classic jury issues on liability and damages: whether Gordon complied with Articles 8.2–8.3 during winding up, whether she and Fusion BK diverted Fusion's core intangible assets and goodwill for their own benefit and continue to use them, and the fair value of what Pollack was deprived of as a 35.222% member. Defendants' legal theories (including abstention and forum-non-conveniens glosses) do not bar this Court from adjudicating routine New York contract and fiduciary claims.

At a minimum, a reasonable jury could credit Plaintiff's testimony, documents, and expert analysis to find for him on liability and award damages. Finally, any request for attorneys' fees under § 9.11 is a remedial matter for post-judgment application—Defendants' unsupported $80,000 figure and unpursued counterclaim provide no basis for summary disposition.

Plaintiff respectfully submits the case should proceed to trial.

Dated: October 27, 2025
Brooklyn, New York

Respectfully submitted,
By: /s/ Brian Lehman
Brian Lehman, Esq.
KASELL LAW FIRM
1038 Jackson Avenue, Suite 4
Long Island City, NY 11101
Attorneys for Plaintiff Kevin Pollack