UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

KEVIN POLLACK,                                         23 Civ. 02376 (SJB)

    *Plaintiff*,

    -against-

JODIE LOUISE GORDON (also known as JODY
GORDON) and FUSION MODELS BK LLC,

    *Defendants*.

-----------------------------------------------------------------X

**PLAINTIFF'S COUNTERSTATEMENT
OF MATERIAL FACTS**
(Pursuant to Local Civil Rule 56.1(b))

Plaintiff Kevin Pollack, by and through his undersigned counsel, respectfully submits this Counterstatement of Material Facts in opposition to Defendants' Motion for Summary Judgment and in accordance with Local Civil Rule 56.1(b). Each paragraph below corresponds to Defendants' numbered paragraph where applicable (paragraphs 1-9), followed by Plaintiff's Additional Material Facts demonstrating genuine disputes for trial (*i.e.*, a reasonable jury could render a verdict in favor of Plaintiff).

**RESPONSES TO DEFENDANTS' RULE 56.1(a) STATEMENT**

    1.    Defendants state that Fusion Modeling Agency LLC ("Fusion") was established on December 7, 2006, with its Operating Agreement dated the same day. **Undisputed**. (Pollack Decl. ¶ 4; Pollack Dep. Tr. at 58-60).

    2.    Defendants state that the members at formation were Jodie Gordon, Kevin Pollack, Charles Hass, Benjamin Chui, Nathan Ankey, and Paragon Strategies Group, Inc. **Undisputed** in substance, except the correct name is Charles Hall, not "Hass." (Pollack Decl. ¶ 5.)

1

3. Defendants state that Ms. Gordon was the managing member with exclusive management and day-to-day control of the company and its assets. **Undisputed**, with clarification that Ms. Gordon was required to operate under the Operating Agreement both during the company's existence and after judicial dissolution. (Pollack Decl. ¶ 6.)

4. Defendants state that on January 11, 2021, Ms. Gordon filed a petition for judicial dissolution in Kings County Supreme Court. **Undisputed**. (Pollack Decl. ¶ 8.)

5. Defendants state that on May 3, 2021, the Supreme Court, Kings County, issued an order dissolving Fusion. **Undisputed**. (Pollack Decl. ¶ 9.)

6. Defendants state that on April 15, 2022, Plaintiff filed an AAA arbitration, *Pollack v. Gordon*, Case No. 01-22-0001-5367. **Undisputed**. (Pollack Decl. ¶ 10.)

7. Defendants state that the dissolution order did not direct liquidation in any specific manner. **Undisputed** with the notation that Plaintiff Article VIII of the Operating Agreement prescribes procedures for liquidation following judicial dissolution. (Pollack Decl. ¶ ¶ 11–12.)

8. Defendants state that Defendants provided Plaintiff with K-1s and tax documents. **Disputed in part**. Plaintiff received K-1 documents through March 12, 2024, when he received the 2023 K-1 via email from accountant Brett Randle with Defendant Gordon cc'd at *jody@fusionmodelsnyc.com*; certain K-1s and other tax filings remain incomplete. (Pollack Decl. ¶¶ 13–14.)

9. Defendants state that Plaintiff received tax filings and financial records. **Disputed**. Plaintiff received some records but not complete federal, state, or city filings either before the complaint or in Defendants' production. (Pollack Decl. ¶¶ 14.)

## ADDITIONAL STATEMENTS OF MATERIAL FACTS

10. Fusion's principal intangible assets consisted of its trade name, trademarks, and digital properties, including the domain www.fusionmodelsnyc.com, branded email addresses, the Instagram account @fusionmodelsnyc, telephone number (212-675-1300), and related branding. (Pollack Decl. ¶ 15; Pollack Dep. Tr. at 120-130, 172-186; Vu Report at 3-4; Vu Dep. at 57, 68-69.)

11. Defendant has stated, "Fusion's always had the same phone number. It's 212-675-1300." (Gordon Dep. 42:13–17.)

12. Fusion conducted its business in interstate and international commerce through these assets, which served as its primary channels of client communication and brand recognition, together with its Brooklyn business address and telephone number. (Pollack Decl. ¶16; Vu Report at 4.)

2

13. From 2006 onward, Fusion continuously used the word "Fusion," along with its website (www.Fusionmodelsnyc.com), its LLC name, and its telephone number (212-675-1300) on contracts, invoices, model cards, and digital communications to identify its services and distinguish itself within the modeling industry. (Pollack Decl. ¶ 17; Pollack Dep. Tr. at 120-130, 172-186.)

14. On or about October 11, 2007, Fusion registered and began using www.Fusionmodelsnyc.com as its official website for client communications, model portfolios, and booking inquiries. (Pollack Decl. ¶ 18; Gordon Dep. 42:1–8) ("Fusion had a website . . . .Yes.").

15. By 2010, Fusion's name appeared in publications and on social-media platforms promoting Fusion's models and clients. (Pollack Decl. ¶ 19.)

16. In or around May 2017, Fusion relocated its offices to 101 North 10th Street, Suite 301, Brooklyn, NY 11249, as part of a rebranding initiative. (Pollack Decl. ¶ 20.)

17. "101 North 10th Street, Suite 301, Brooklyn, New York 11249" continues to be the location of where Defendant Gordon and Defendant Fusion Model BK LLC are located. (Gordon Dep. at 4.)

18. There have been three Fusion entities: (1) Fusion Model Management, Inc., (2) Fusion Modeling Agency LLC, and (3) "Fusion Models BK." Gordon Dep. at 16. ("You're aware of my Fusion Models BK.· You're aware of that.").

19. In June 2017, Fusion introduced a stylized logo displaying the word "FUSION" in a tall, high-contrast serif typeface with closely spaced letters that appear "fused" together; this distinct visual identifier was used in commerce to represent the agency. (Pollack Decl. ¶¶ 21-22.)

20. A true and accurate copy of the stylized logo appears on Fusion's official website as archived by the Internet Archive in July 2017, which accurately depicts its appearance to the public at that time. (Pollack Decl. ¶ 23.)

21. On June 26, 2020, Ms. Gordon emailed Mr. Pollack from jody@fusionmodelsnyc.com with the subject line "Business Opportunity - Investment with Fusion," describing Fusion as a "respected high fashion business," a "leading boutique modeling agency," and a "Top 10 agency - Models.com," listing luxury clients (Victoria's Secret, Tommy Hilfiger, Miu Miu, Zara, Chanel, Marc Jacobs, Michael Kors) and seeking investments of $500,000 to $1 million. (Pollack Decl. ¶¶ 24-25; P_2698).

22. The email confirms that as of mid-2020 Fusion remained active and profitable with significant goodwill and industry standing. (Pollack Decl. ¶ 26; Vu Report at 4; Vu Dep. at 57 (brand is a value driver).)

23. Ms. Gordon noted that she sent the solicitation from her personal account rather than Fusion's email, confirming that Fusion business was conducted through multiple addresses. (Pollack Decl. ¶ 27).

3

24. Following the May 3, 2021 dissolution order, Fusion's trade name, domain, telephone number, and digital accounts remained undivided pending lawful liquidation. (Pollack Decl. ¶ 28.)

25. Plaintiff continued receiving K-1 forms through March 12, 2024, showing that Fusion remained active for tax purposes through 2023. (Pollack Decl. ¶ 29)

26. Ms. Gordon stated in her summary-judgment brief that she is the sole member of Fusion Models BK LLC, formed in 2021 and operating from Fusion's Brooklyn address. (Pollack Decl. ¶ 30-31 (quoting Def. Mem. at 9); *see also* Gordon Dep. 16:11–15. ("You're aware of my Fusion Models BK.· You're aware of that.").

27. Since Fusion's dissolution, Ms. Gordon and Fusion BK have continued using Fusion's web domain, email, mark, logo, telephone number, digital branding, and former address. (Pollack Decl. ¶ 32.)

28. As of October 24, 2025, the Instagram account @Fusionmodelsnyc remained active with approximately 122,000 followers and 5,111 posts listing the Brooklyn address and telephone number. (Pollack Decl. ¶ 33.)

29. The account cross-links to @FusionTalentBK, which describes itself as "a globally connected agency" and "Established 2023, Brooklyn NY" and displays the same logo introduced in 2017. (Pollack Decl. ¶ 34.)

30. As of October 24, 2025, @FusionTalentBK had approximately 1,311 followers (about 1.07 percent of @Fusionmodelsnyc's following), illustrating the relative market recognition of the original Fusion brand and the cost and time it would take to build an online presense. (Pollack Decl. ¶ 35.)

31. Defendant Gordon's personal Instagram account @JodieLouiseGordon lists jody@fusionmodelsnyc.com and links to both @fusionmodelsnyc and fusionmodelsnyc.com, showing continued use of Fusion's trade name and contact information. (Pollack Decl. ¶ 36.)

32. On October 24, 2025, www.FusionModelsBK.com automatically redirected to www.Fusionmodelsnyc.com, which uses the same logo, address, and telephone number. (Pollack Decl. ¶ 37-38.)

33. The website's design, layout, and trade dress remain materially identical to those used before Fusion's dissolution and link directly to @Fusionmodelsnyc, confirming that Defendants continue to use Fusion's original digital assets for commercial gain. (Pollack Decl. ¶¶ 39-42.)

34. Defendants did not create a new brand identity but continued operations under Fusion's established assets, which demonstrates their market value and ready salability within a 90-day liquidation period. (Pollack Decl. ¶ 43-44; Pollack Dep. Tr. at 183-84 ("I could have sold these assets possibly within a couple of weeks, maybe faster. Worse case, maybe it takes a month or two, but certainly not six months, or a year, or never. Which apparently is the case with Jody,

4

who just took all of the assets that were built using my investment capital, not paying me any distributions along the way, paying herself…"); Vu Report at 5; Vu Dep. at 42, 47–48, 71–74.)

35. In April 2020, Ms. Gordon stated to Mr. Pollack that Fusion's gross revenue was $4 million and accountant Brett Randle valued Fusion at "four-to-five times" that amount, consistent with a $16 to $20 million valuation. (Pollack Decl. ¶¶ 45-47.)

36. Ms. Gordon's 2020 email (P_2698) likewise described Fusion as "well operated for 15 years through diverse economic times," and sought major investment for expansion, confirming the value of the assets. (Pollack Decl. ¶ 48.)

37. In Mr. Pollack's professional judgment, Fusion's intangible assets could have been sold for approximately $16 million within 90 days of judicial dissolution based on market conditions and buyer interest. (Pollack Decl. ¶ 49; Pollack Dep. Tr. at 183-84; Vu Dep. at 21–22, 37–38, 84–86)).

38. Mr. Pollack's background includes raising $10 million in capital within a month for uBid and conducting over 50 company valuations while at Banc of America Securities and Paragon Capital LP, providing expert basis for his opinions. (Pollack Decl. ¶ 52; Pollack Dep. Tr. at 183-84)

39. Fusion's 2014 valuation was approximately $10 million, and its value would double to about $20 million by 2021 at a 9.9 percent continuous annual growth rate. (Pollack Decl. ¶ 50; Ex. P_2300.)

40. Mr. Pollack, owning 35.222 percent of Fusion, served continuously as advisor on financial matters from 2006 to 2021 and has firsthand knowledge of its valuation and operations. (Pollack Decl. ¶ 51; Pollack Dep. Tr. at 120-30, 172-84.)

41. After 2007 and up until judicial dissolution, Fusion established itself as a prominent agency with models from across the world and well-regarded clientele. (Pollack Dep. Tr. at 120-30, 172-84; P_2698.)

42. Fusion functioned as "a market maker" within the modeling industry by facilitating transactions between diverse models from across the world and clients seeking representation for end projects, thereby ensuring liquidity and receiving a premium for the clients hiring the models. (Pollack Decl. ¶ 54; Vu Report at 3-4; Vu Dep. at 57.)

43. Fusion's business model created value through network effects on both sides of the market—models and clients—which is why its brand and digital platforms were the core economic drivers. (Pollack Decl. ¶¶ 15, 54; Pollack Dep. Tr. at 120-30, 172-84; Vu Report at 3-4.)

44. Fusion's service marks are powerful intangible asset providing a competitive advantage, creating barriers to entry for potential competitors and commanding a premium in contractual negotiations. (Pollack Decl. ¶¶ 15, 54; Pollack Dep. Tr. at 120-30, 172-84; Vu Report at 3-4; P_2300-01; Vu Dep. at 68–69).

5

45.   Fusion's well-known mark and brand name, and the substantial cost and time associated with recreating a brand that would allow models from across-the-world to connect with companies seeking to retain them for projects, operates as an economic moat protecting its market share and ensuring long-term profitability. P_2300-01; Vu Report at 4 ("The primary asset of Fusion Models is its service mark, which functions as intellectual property embodying significant goodwill and brand equity that was established over 15 years. The service mark "Fusion" is a powerful intangible asset. This brand equity provides a competitive advantage, creating barriers to entry for potential competitors and commanding a premium in contractual negotiations. The service mark acts as an economic moat, protecting the firm's market share and ensuring long-term profitability.").

46.   Fusion's assets were never sold but rather continue to be used by Gordon and the new entity she formed after dissolution. (Pollack Decl. ¶¶ 30-44.)

47.   The continued use of Fusion's domain, marks, and phone number demonstrates the ongoing operation of the same business under a different LLC, as those intangible assets constitute the core channels through which the agency connects models and clients and thereby receive its premium revenue. (Pollack Decl. ¶¶ 30-44; Vu Report at 3-5.)

48.   Fusion's trade name, marks, domain, email system, social-media accounts, and goodwill—could have been sold for approximately $16 million within ninety days of dissolution. Pollack Decl. ¶¶ 47, 49, 56; Vu Report at 3-5; Vu Dep. at 21–22, 24–25, 84–86.)

49.   Larger acquirers could eliminate duplicative expenses and thereby realize an effective valuation between $11 million and $20 million. (Pollack Decl. ¶¶ 49-50, 57; Pollack Dep. at 126-27; Vu Report at 3-5; Vu Dep. at 38, 40–42, 46–48, 71–74).

50.   Fusion functioned as "a market maker" in the modeling industry by connecting models located across the world with clients and capturing a premium spread between the fees paid by clients and the commissions earned from models. Fusion's value as residing not in its physical assets but in its brand, reputation, and digital network, which generated recurring business from worldwide. Any entity acquiring Fusion's assets could plug its client list and brand directly into their existing structure and eliminate redundant costs. The company's name, website, and social-media presence—including the @fusionmodelsnyc Instagram account—were what generated the traffic, the inquiries, and the value, and that those assets could easily be sold in under 90 days. (Pollack Decl. ¶54; *see also* Pollack Decl. ¶¶ 49-50, 57; Pollack Dep. at 126-27; Vu Report at 3-5; Vu Dep. at 42, 47–48, 71–74, 62.)

51.   The company's intangible assets—its goodwill, digital footprint, and service marks—were the primary source of its economic value and could have commanded eight-figure consideration in an open market sale. (Pollack Decl. ¶¶ 15, 54; Pollack Dep. Tr. at 120-30, 172-84; Vu Report at 3-4; P_2300-01; P_2698; Vu Dep. at 21–22, 24–25, 57, 84–86).

6

Dated: October 27, 2025
Brooklyn, New York

Respectfully submitted,
By: /s/ *Brian Lehman*
Brian Lehman, Esq.
KASELL LAW FIRM
1038 Jackson Avenue, Suite 4
Long Island City, NY 11101
Attorneys for Plaintiff Kevin Pollack