UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KEVIN POLLACK,

                       Plaintiff,

                v.

JODIE GORDON & FUSION MODELS BK LLC,

                     Defendants.
------------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
23-CV-2376-SJB-LKE

**BULSARA, United States District Judge:**

This case arises out of the dissolution of Fusion Modeling Agency LLC

("Fusion")—a company previously run by Plaintiff Kevin Pollack and Defendant Jodie

Gordon together.  Following a breakdown in their relationship, Fusion was dissolved

by judicial decree on May 3, 2021.  On March 28, 2023, Pollack filed this action against

Gordon and Fusion Models BK LLC ("Fusion BK") (collectively, "Defendants") alleging

that Gordon wrongfully diverted Fusion's assets to her new company—Fusion BK—

and asserting claims for breach of contract, tortious interference with contract, breach of

fiduciary duty, inducement of breach of fiduciary duty, violation of New York Limited

Liability Company Law ("NYLLCL") § 1102(b) and Fusion's Operating Agreement, and

for an equitable accounting.  Defendants have moved for summary judgment on all of

Pollack's claims, (Defs.' Mot. for Summ. J. dated Sep. 29, 2025 ("Defs.' SJ Mot."), Dkt.

No. 70-1), and simultaneously seek to exclude Pollack's valuation expert, (Defs.' Mot. to

Exclude dated Sep. 29, 2025 ("Defs.' *Daubert* Mot."), Dkt. No. 72-1).  For the reasons

explained below, the motion for summary judgment is granted in part and denied in

part, and the motion to exclude Pollack's expert is denied.

<u>LEGAL STANDARD</u>

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways. Fed. R. Civ. P. 56(c)(1). It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials." *Id.* R. 56(c)(1)(A). Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth

purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b). In both instances, the party must support its position by citing to admissible evidence from the record. *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded." *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-0412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that

comply with Local Rule 56.1[.]" (citations omitted)). The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence. *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence).

The Court must also disregard conclusory denials that lack citations to admissible evidence. *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.* They should contain factual assertions, with citation to the record. They should not contain conclusions[.]"), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003). Also, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted." Loc. Civ. R. 56.1(c). The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits. *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v.*

4

*WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court finds the following facts—drawn from the pleadings, the parties' respective Rule 56.1 statements, and supporting affidavits and exhibits attached thereto—are undisputed unless otherwise noted.

Fusion was established on December 7, 2006. (Defs.' Rule 56.1 Statement dated Sep. 29, 2025 ("Defs.' 56.1 Stmt."), Dkt. No. 71 ¶ 1; Pl.'s Rule 56.1 Statement dated Oct. 27, 2025 ("Pl.'s 56.1 Stmt."), Dkt. No. 73-1 ¶ 1). Gordon and Pollack were members of Fusion at formation, along with Charles Hall, Benjamin Chui, Nathan Ankey, and Paragon Strategies Group, Inc. (*Id.* ¶ 2; Defs.' 56.1 Stmt. ¶ 2). Gordon was the managing member and controlled Fusion's day-to-day operations, (*id.* ¶ 3; Pl.'s 56.1 Stmt. ¶ 3), and Pollack owned 35.222% and served as an advisor on financial matters from 2006 to 2021, (Pl.'s Rule 56.1 Counter-Statement of Additional Material Facts dated Oct. 27, 2025 ("Pl.'s 56.1 Counter-Statement"), Dkt. No. 73-1 ¶ 40).[1]

---

[1] Defendants did not respond to Pollack's counterstatement of additional material facts, so the Court deems those facts admitted where they are supported by record evidence. *See, e.g., Okeke v. N.Y. & Presbyterian Hosp.*, No. 16-CV-0570, 2017 WL 1536060, at *1 (S.D.N.Y. Apr. 24, 2017) ("[O]nce the nonmoving party has put material facts into dispute via its additional 56.1 statement, the moving party must rebut them in order for the Court to grant summary judgment in its favor."); *Marseille v. Nat'l Freight Inc.*, No. 15-CV-7924, 2018 WL 2041387, at *1 n.1 (S.D.N.Y. Apr. 30, 2018) ("[B]ecause Plaintiff has failed to respond to Defendant's counterstatement of additional material facts, the Court may deem those facts admitted so long as they are supported by the record evidence.").

5

As a modeling agency, Fusion facilitated transactions between models from across the world and clients seeking models for projects. (*Id.* ¶¶ 41–42). In 2014, Fusion's valuation was approximately $ 10 million, (*id.* ¶ 39), and in 2020, Gordon told Pollack Fusion's gross revenue was $ 4 million, and an accountant valued Fusion at 4 to 5 times that amount, consistent with a $ 16 million to $ 20 million valuation, (*id.* ¶ 35).

Fusion held certain intangible assets—including its trade name, trademarks, digital properties, domain name www.fusionmodelsnyc.com, branded email addresses, Instagram account @fusionmodelsnyc, and telephone number (212-675-1300). (*Id.* ¶ 10). From 2006 onward, Fusion continuously used the word "Fusion," the website domain www.fusionmodelsnyc.com, and the telephone number 212-675-1300 on contracts, invoices, model cards, and digital communications. (*Id.* ¶ 13). And in October 2007, Fusion registered and began using www.fusionmodelsnyc.com as its official website for client communications, model portfolios, and booking inquiries. (Pl.'s 56.1 Counter-Statement ¶ 14). In June 2017, Fusion introduced a logo displaying the word "Fusion" in a tall, high-contrast serif typeface with closely spaced letters which appear fused together. (*Id.* ¶ 19). These assets served as Fusion's primary channels of client communication and brand recognition. (*Id.* ¶ 12).

On January 11, 2021, Gordon filed a petition for judicial dissolution of Fusion in Kings County Supreme Court. (Pl.'s 56.1 Stmt. ¶ 4; Defs.' 56.1 Stmt. ¶ 4). An order dissolving Fusion was entered on May 3, 2021. (*Id.* ¶ 5; Pl.'s 56.1 Stmt. ¶ 5). Following the dissolution order, Fusion's trade name, domain, telephone number, and digital accounts remained undivided pending liquidation. (Pl.'s 56.1 Counter-Statement ¶ 24).

In 2021, Gordon formed Fusion BK, and she is its sole member. (*Id.* ¶ 26). Despite Fusion's dissolution, its assets were never sold. (*Id.* ¶ 46). Since Fusion's dissolution, Gordon and Fusion BK have continued to use Fusion's web domain, email, mark, logo, telephone number, digital branding, and former address. (*Id.* ¶ 27).

Pollack commenced this lawsuit on March 28, 2023, asserting claims for breach of contract, breach of fiduciary duty, and violation of NYLLCL § 1102(b) and Fusion's Operating Agreement against Gordon, and for tortious interference with contract and inducement of breach of fiduciary duty against Fusion BK. (Compl., Dkt. No. 1 ¶¶ 64–99). Pollack also seeks an equitable accounting and attorney's fees. (*Id.* ¶¶ 100–07).

<u>DISCUSSION</u>

## I. *Daubert* Motion

"The admission of expert testimony is governed by Federal Rule of Evidence 702, which provides that an expert may testify if the expert's 'scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.'" *Waldman v. Palestine Liberation Org.*, 171 F.4th 575, 594 (2d Cir. 2026) (quoting Fed. R. Evid. 702(a)). Under Federal Rule of Evidence 702 and *Daubert*, the proponent of expert testimony must show "that (1) the expert is qualified; (2) the proposed opinion is based on reliable data and methodology; and (3) the proposed testimony would be helpful to the trier of fact." *Nike, Inc. v. StockX LLC*, No. 22-CV-0983, 2024 WL 3361411, at *2 (S.D.N.Y. July 10, 2024) (citing *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005)).

To demonstrate the value of Fusion's intangible assets, Pollack relies in part on his valuation expert, Quan Vu. (*See, e.g.*, Pl.'s 56.1 Counter-Statement ¶¶ 45, 48–51; Pl.'s

7

Opp'n to Defs.' SJ Mot. dated Oct. 27, 2025 ("Pl.'s SJ Opp'n"), Dkt. No. 73 at 11, 15–16).

Vu has worked in valuation and finance for over twenty years, serving as Chief

Financial Officer, Chief Business Officer, and Managing Director for several companies

across the pharmaceutical, healthcare, and technology sectors. (*See* Resume & Deal

Sheet of Quan Vu, attached to Decl. of Brian Lehman in Supp. of Pl.'s *Daubert* Opp'n

("Lehman *Daubert* Decl.") as Ex. 2, Dkt. No. 74-1). He has extensive experience in

corporate transactions and has previously performed valuations like the one he

performed here. (*See id.*; Dep. of Quan Vu ("Vu Dep."), attached to Lehman *Daubert*

Decl. as Ex. 3, Dkt. No. 74-1 at 10:15–11:9).

To assess Fusion's value, Vu used the Discounted Cash Flow ("DCF") method.

(Expert Report of Quan Vu ("Vu Report"), attached to Lehman *Daubert* Decl. as Ex. 1,

Dkt. No. 74-1 at 1). DCF is a financial valuation method used to estimate the value of a

company based on expected future cash flows. (*Id.*). In conducting a DCF valuation:

> [T]he analyst asks how much money would need to be invested today to equal the value of the estimated future net cash flow of the company (its projected revenues minus its projected costs, basically). A company's future cash flow must be discounted to equal its present value for two reasons. First, money today is worth more than money tomorrow. Second, the future cash flow is worth less than its nominal amount because it may not materialize—a going concern is, after all, a risky proposition. The DCF analyst, therefore, discounts the future cash flows to their present value using a statistic that combines these two discount rates: the weighted average cost of capital[.]

*Sodhi v. Gentium S.p.A.*, No. 14-CV-0287, 2015 WL 273724, at *5 (S.D.N.Y. Jan. 22, 2015).

Vu used DCF to value Fusion because there were "no publicly available precedent

transactions and limited public traded comps." (Vu Report at 3). His valuation was

based on Fusion's profit and loss statements from 2013–2020, tax filings, balance sheets,

8

bank statements, and credit card statements, as well as publicly available data—including annual reports and quarterly reports—for a publicly traded comparable company, Wilhelmina International Inc. (*Id.* at 1). Ultimately, Vu estimated Fusion's value to be between $3.4 million and $5.4 million. (*Id.*).

Defendants make several arguments to exclude Vu's testimony, all of which are meritless. To start, Defendants contend that Vu is not qualified because he is not accredited by any professional valuation body, and because he has not previously testified as an expert. (Defs.' *Daubert* Mot. at 2). But these are not requirements to provide an expert opinion—and the authority is to the contrary. *See, e.g.*, *Redcell Corp. v. A. J. Trucco, Inc.*, No. 20-CV-0018, 2022 WL 3700148, at *10 (S.D.N.Y. Aug. 26, 2022) ("[T]he notion that *Daubert* . . . requires particular credentials for an expert witness is radically unsound. The Federal Rules of Evidence, which *Daubert* interprets rather than overrides, do not require that expert witnesses be academics or PhDs. . . . Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." (quotation omitted)); *Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 178–79 (S.D.N.Y. 2006) (rejecting argument that expert was unqualified because he "ha[d] never provided expert testimony at a deposition or in court," and concluding expert was "qualified in his field of expertise" and "he need not be familiar with the rules of litigation" or be a "professional witness" to provide expert testimony). Vu has sufficient professional experience in valuation to opine upon the matters in his report—he has extensive industry experience and has previously conducted similar valuations.

Separately, Defendants contend Vu's testimony is unreliable because he used the "wrong standard."  (Defs.' *Daubert* Mot. at 6).  Defendants argue that "DCF is appropriate only when historical operations are not indicative of future performance," and because Fusion "operated continuously from 2007 until its dissolution in 2021," "[i]ts historical operations are indicative of its future earning potential."  (*Id.* at 8).

In support of this argument, Defendants offer a rebuttal report prepared by Heidi Muckler.  (Report of Heidi F. Muckler ("Muckler Report"), attached to Defs.' *Daubert* Mot. as Ex. 3, Dkt. No. 72-4).  Muckler contends that Vu's report fails to address the capitalization approach or capitalized economic income method, which should be used "if the economic flow is either stable or declining at a fairly even rate."  (*Id.* at 2).  But Defendants cite not a single case suggesting that DCF is not a reliable valuation method, or requiring the use of Defendants' preferred capitalized economic income method.  Indeed, while quibbling with Vu's use of the term "intrinsic value," Defendants cite authority supporting the use of the DCF method—"[m]any authorities recognize that the most reliable method for determining the value of a business is the discounted cas[h] flow . . . method."  (Defs.' *Daubert* Mot. at 7 (quoting *Lippe v. Bairnco Corp.*, 288 B.R. 678, 689 (S.D.N.Y. 2003), *aff'd,* 99 F. App'x 274 (2d Cir. 2004))).  And Pollack sets forth a number of cases supporting the use of DCF for valuation.  (*See* Pl.'s Opp'n to Defs.' *Daubert* Mot. dated Oct. 27, 2025, Dkt. No. 74 at 4–6 (citing *Energy Cap. Corp. v. United States*, 302 F.3d 1314, 1331 (Fed. Cir. 2002) ("The DCF method is currently

10

in wide use in the analysis of capital stock, acquisition candidates, capital projects, financial instruments, and contract rights."); *Lippe*, 288 B.R. at 689)).[2]

Lastly, Defendants raise various other arguments—including that Vu's assumptions regarding expense reductions were unjustified; that Vu improperly applied EBITDA multiples from Wilhelmina Models, a publicly traded company with revenues much higher than Fusion's, and applied a growth rate far above industry norms; and that Vu failed to interview Gordon when conducting his valuation. (Defs.' *Daubert* Mot. at 8–11). But these go to the weight of the evidence, not its admissibility. *See U.S. Sec. & Exch. Comm'n v. Vali Mgmt. Partners*, No. 21-0453, 2022 WL 2155094, at *2 (2d Cir. June 15, 2022) ("Contentions that an expert's assumptions are unfounded or 'gaps or inconsistencies in the reasoning leading to the expert's opinion go to the weight of the evidence, not to its admissibility.'" (quoting *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017)); *United States v. Gil*, 680 F. App'x 11, 13 (2d Cir. 2017) ("[A]rguments about the subjectivity inherent in otherwise reliable methodologies go to the weight of the evidence, not to its admissibility, and [a]re matters for cross-examination and argument to the jury." (quotation omitted)); *e.g.*, *Manbro Energy Corp. v. Chatterjee Advisors, LLC*, No. 20-CV-3773, 2022 WL 4225543, at *9 (S.D.N.Y. Sep. 13, 2022) ("As for Dr. Schoar's comparable companies analysis, any selection of comparable companies is

---

[2] Defendants quibble with Vu's use of the term "intrinsic value" in his report, seemingly arguing that because Vu stated he was measuring Fusion's intrinsic value, he was merely speculating. (Defs.' *Daubert* Mot. at 7). This argument over semantics is meritless—Vu's report plainly states that he used DCF—a widely accepted valuation methodology—to estimate the intrinsic value of the company, relying on Fusion's financial documents. (Vu Report at 1).

inherently the product of expert judgment. . . . Defendants' second-guessing of Dr. Schoar's judgment and arguments that she should have considered additional information or applied a different method goes to the weight of such testimony, not admissibility." (quotation omitted)).

In sum, Vu is qualified, his testimony is based on a valuation method widely accepted as reliable, and it would be helpful to the jury in assessing the value of Fusion's intangible assets. Accordingly, Defendants' motion to exclude Vu's testimony is denied.

## II.      Summary Judgment Motion

As an initial matter, Defendants raise various arguments that this Court should abstain from exercising jurisdiction over Pollack's claims, none of which have merit. (*See* Defs.' SJ Mot. at 5–6). Invoking several abstention doctrines, Defendants argue that exercising jurisdiction here would be improper because the Kings County Supreme Court already entered a judicial decree dissolving Fusion, and Pollack's claims are an improper attack on that dissolution order. (*Id.*).

The cases Defendants cite are inapposite. Defendants cite *Friedman v. Revenue Mgmt. of N.Y., Inc.*, 38 F.3d 668 (2d Cir. 1994), and *Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289 (E.D.N.Y. 1999), to argue for *Burford*[3] abstention, arguing that "federal courts should abstain from adjudicating dissolution claims under New York law" due to "the state's strong interest in maintaining uniformity and expertise in corporate dissolution matters." (Defs.' SJ Mot. at 5–6). Pollack's claims, however, do not seek dissolution or

---

[3] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

attack the dissolution order; and nowhere does he challenge or seek to modify the dissolution order. Indeed, Pollack's claims accept Fusion's dissolution—he asserts claims based on Gordon and Fusion BK's *post-dissolution* conduct. There is no basis for abstention under *Burford*—indeed, even the cases Defendants cite only contemplate abstention over "claim[s] for dissolution," i.e., claims asking the Court to dissolve a corporation. *See Friedman,* 38 F.3d at 671. This is plainly not such a case. And in *Feiwus*, the court acknowledged that while it may "abstain from exercising jurisdiction over discretionary claims for equitable relief such as a demand for corporate dissolution or buy-out, [it] may not relinquish jurisdiction over common law claims for damages." *Feiwus,* 43 F. Supp. 2d at 290; *see also 767 Third Ave. Assocs. v. Consulate Gen. of Socialist Fed. Republic of Yugoslavia*, 218 F.3d 152, 163 (2d Cir. 2000) ("[W]hen federal courts apply such abstention principles they may enter a stay, but are usually not permitted to dismiss the action altogether if the action is for money damages."). Damages are precisely the types of claims Pollack asserts here.

Separately, the Kings County proceedings concluded in 2021 with entry of the dissolution order—providing no reason for the Court to abstain under *Colorado River*.[4] "[I]n certain 'exceptional circumstances' a federal court may abstain from exercising jurisdiction where an existing parallel state-court litigation would accomplish a '*comprehensive disposition of litigation*.'" *Mochary v. Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817–18 (1976)). To abstain under *Colorado River*, "courts are directed to make a threshold

---

[4] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

13

determination that the concurrent proceedings are parallel." *Id.* (quotation omitted).

"Suits are parallel when substantially the same parties are contemporaneously litigating

substantially the same issue in another forum." *Id.* (quotation omitted). To the extent

there are concurrent state court proceedings here, they are not parallel. Although the

state court proceeding technically remains "active," there has been no action in that

proceeding since 2021, and Pollack never sought to litigate these claims there. *See*

Notice of Entry, *Gordon v. Fusion Modeling Agency, LLC*, No. 500709/2021 (N.Y. Sup. Ct.

May 10, 2021); *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,

673 F.3d 84, 102 (2d Cir. 2012) ("Even where, as here, a state action was commenced

before the federal suit, that factor will carry little weight if there has been limited

progress in [the] state court suit." (quotation omitted)); *Mochary*, 42 F.4th at 86 ("Mere

commonality in subject matter does not render actions parallel." (quotation omitted)).

The Court now turns to Pollack's individual claims, addressing each in turn.

### A. Breach of Contract

The elements of a breach of contract claim are "(1) the existence of a contract,

(2) performance by the party seeking recovery, (3) breach by the other party, and

(4) damages suffered as a result of the breach." *Zam & Zam Super Mkt., LLC v. Ignite*

*Payments, LLC*, 736 F. App'x 274, 276 (2d Cir. 2018) (citing *Johnson v. Nextel Commc'ns,*

*Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).[5]

Gordon contends that Pollack's breach of contract claim fails as a matter of law

because she acted in compliance with the judicial order of dissolution, and nothing in

the Operating Agreement "requires immediate liquidation or prohibits transfer of assets

in the ordinary course." (Defs.' SJ Mot. at 7). At minimum, issues of fact prevent the

Court from resolving the claim at summary judgment. Although the judicial order

dissolving Fusion did not set forth specific processes and timelines for liquidation, the

dissolution order does not vitiate Gordon's contractual obligations under the Operating

Agreement. The Operating Agreement plainly sets forth specific procedures to follow

dissolution. It provides that upon judicial dissolution:

> 8.2 *Winding up. . . .* [T]he Managing Members will take full account of the Company's liabilities and assets, and the Company's assets will be liquidated as promptly as is consistent with obtaining the fair value thereof. The proceeds from the liquidation of the Company's assets will be applied and distributed in the following order:
>
> > 8.2.1 First, to the payment and discharge of all the Company's debts and liabilities (including debts and liabilities to the Members, to the extent permitted by law), and the establishment of any necessary reserves;
> >
> > 8.2.2 The balance, to the Members in accordance with the percentage of Units owned by each Member.

---

[5] Fusion's Operating Agreement provides: "[t]his Agreement will be governed by and interpreted under the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York." (Operating Agreement, attached to Decl. of Brian Lehman in Supp. of Pl.'s SJ Opp'n ("Lehman SJ Decl.") as Ex. 7, Dkt No. 73-2 § 9.10). Accordingly, the Court applies New York law to assess Pollack's breach of contract claim.

8.3 *Timing of Liquidating Distributions.* Liquidating distributions will be made by the end of the taxable year in which the liquidation occurs, or, if later, within **ninety (90) days** of the liquidating event and will otherwise comply with Regulations Section 1.704-1(b).

(Operating Agreement, attached to Decl. of Brian Lehman in Supp. of Pl.'s SJ Opp'n ("Lehman SJ Decl.") as Ex. 7, Dkt No. 73-2 §§ 8.2, 8.3).

Pollack has set forth sufficient evidence that Gordon's post-dissolution conduct constitutes a breach of these terms. The undisputed evidence plainly demonstrates that Gordon did not liquidate all of Fusion's assets by the end of the 2021 tax year. (*See id.*). Pollack sets forth evidence that Gordon transferred Fusion's marks, trade name, web domain, social media accounts, and goodwill to Fusion BK, without compensating Pollack—facts that she does not dispute. (*See* Pl.'s 56.1 Counter-Statement ¶¶ 27–34, 46; Pl.'s SJ Opp'n at 2). At minimum, whether Gordon's conduct constitutes a breach of the agreement is an issue of fact for the jury to decide. *See, e.g.*, *N.Y.C. Transit Auth. v. Express Scripts, Inc.*, 588 F. Supp. 3d 424, 439 (S.D.N.Y. 2022) ("Given that a reasonable jury could conclude Express Scripts breached its obligations under Sections 4.1, 4.2, 4.7, and 4.16 based on the evidence NYCTA has presented, Express Scripts is not entitled to

summary judgment on these grounds." (quotation omitted)).[6]  Accordingly, the motion

for summary judgment on this claim is denied.

**B.      Tortious Interference with Contract**

Under New York law, "the elements of tortious interference with contract are

(1) the existence of a valid contract between the plaintiff and a third party; (2) the

defendant's knowledge of the contract; (3) the defendant's intentional procurement of

the third-party's breach of the contract without justification; (4) actual breach of the

contract; and (5) damages resulting therefrom." *Maricultura Del Norte, S. de R.L. de

C.V. v. Umami Sustainable Seafood, Inc.*, 769 F. App'x 44, 54 (2d Cir. 2019) (quotation

omitted).  "One asserting a tortious interference claim must also show that the

defendant was not a party to the contract with which he allegedly interfered." *TVT*

*Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 88 (2d Cir. 2005); *see also Fillmore E. BS Fin.*

*Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 18 (2d Cir. 2014) ("[O]nly a stranger to

---

[6] Defendants' conclusory argument that Pollack "lacks standing" to assert these claims because "once dissolution is in order, claims concerning the LLC belong to the LLC in winding up, not to individual members," (Defs.' SJ Mot. at 6), is meritless. These claims arise under the Operating Agreement—a contract between Pollack and Gordon to which the LLC is not a party.  *See, e.g.*, *Cordts-Auth v. Crunk, LLC*, 815 F. Supp. 2d 778, 798 (S.D.N.Y. 2011) ("Defendants correctly point out that Crunk is not a party to the Crunk Operating Agreement; instead, the Crunk Operating Agreement is the means by which Crunk was created."), *aff'd*, 479 F. App'x 375 (2d Cir. 2012).  In any event, Pollack's claims are direct, not derivative—Gordon's contractual obligation to liquidate Fusion's assets upon dissolution is an obligation owed to Pollack personally, not the LLC.  *See In re 305 E. 61st St. Group LLC*, 130 F.4th 272, 279 (2d Cir. 2025); *e.g.*, *Eddi v. Antebi*, No. 24-CV-0520, 2026 WL 880263, at *11 (S.D.N.Y. Mar. 31, 2026) (finding claims that the managers "diverted funds to [themselves and another individual] at Plaintiff's expense" were direct because "by the time of the diversion, these funds were owed to the Plaintiff, not the Delaware LLCs, and they would have gone to him had [the managers] not diverted them to [themselves] or entities that they owned").

a contract, such as a third party, can be liable for tortious interference with a contract." (quotation omitted)).

Pollack contends that Fusion BK—Gordon's new LLC—induced Gordon to breach Fusion's Operating Agreement. (Compl. ¶¶ 71–77; Pl.'s SJ Opp'n at 22). Gordon, however, contends that because she is the sole member of Fusion BK, she cannot tortiously interfere with her own contract. (Defs.' SJ Mot. at 8). But under New York law, "[c]orporations . . . are legal entities distinct from their managers and shareholders and have an independent legal existence." *Novak v. Scarborough All. Corp.*, 481 F. Supp. 2d 289, 292 (S.D.N.Y. 2007) (quoting *Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 656 (1976)). The same is true for LLCs. *See Weber v. King*, 110 F. Supp. 2d 124, 128 (E.D.N.Y. 2000) ("Under New York's Limited Liability Company Law . . . , an LLC is a 'separate legal entity.'" (quoting NYLLCL § 203(d))).

Fusion BK is therefore legally distinct from Gordon—and it is a stranger to the contract between Gordon and Pollack. *See, e.g.*, *Baja Food Servs. S. De RL De DV v. Peanut Butter & Co.*, No. 14-CV-5290, 2015 WL 1137486, at *3 (S.D.N.Y. Mar. 13, 2015) ("Because PBC's claim is against Specialty and Specialty was not a party to the contract, the motion to dismiss under the 'No Stranger' rule is denied."). Fusion BK does not argue that Pollack failed to satisfy the other elements, and the Court finds that Pollack has set forth sufficient evidence to raise a triable issue of fact as to whether Fusion BK tortiously interfered with his contract with Gordon. Accordingly, the motion for summary judgment on this claim is denied.

18

### C. Breach of Fiduciary Duty

"The elements of a breach of fiduciary duty claim under New York law are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) 'damages directly caused by [the defendant's] misconduct.'" *Murphy v. Morlitz*, 751 F. App'x 28, 30 (2d Cir. 2018) (quoting *Pokoik v. Pokoik*, 115 A.D.3d 428, 429 (1st Dep't 2014)). "Under New York law, managing members of LLCs . . . owe fiduciary duties to non-managing members[.]" *Najjar Grp., LLC v. W. 56th Hotel LLC*, 850 F. App'x 69, 73 (2d Cir. 2021). "Included in these duties is a 'duty of undivided and undiluted loyalty . . . barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty.'" *Id.* (quoting *Pokoik*, 115 A.D.3d at 429); *see also Rennaker Co. Consulting, Inc. v. TLM Grp., LLC*, No. 16-CV-3787, 2017 WL 2240235, at *4 (S.D.N.Y. Mar. 29, 2017) ("Under New York law, LLC members owe one another, as well as the LLC, various fiduciary duties. Among these duties are the duty of care, duty of loyalty, and the duty of disclosure." (citations omitted)).

Gordon contends that Pollack's breach of fiduciary duty claim should be dismissed as duplicative of his breach of contract claim. (Defs.' SJ Mot. at 10). The Court agrees. Under New York law, "[t]wo claims are duplicative of one another if they 'arise from the same facts and do not allege distinct damages.'" *In re 305 E. 61st St. Grp. LLC*, 130 F.4th 272, 282 (2d Cir. 2025) (quotation omitted). "[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated and where plaintiff is essentially seeking enforcement of the

bargain, the action should proceed under a contract theory." *IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, 40 N.Y.3d 277, 290 (2023) (quotation omitted). To assess whether a breach of fiduciary duty claim is duplicative of a breach of contract claim, courts "evaluate[ ] the nature of the injury, how the injury occurred and the harm it caused." *Id.* at 291 (quotation omitted). "Where [t]he only damages alleged under either theory of recovery are identical for both claims, such damages are within the contemplation of the parties under the contract and the noncontractual claims must be dismissed as duplicative." *Id.* at 292 (quotation omitted).

Pollack's breach of fiduciary duty claim is based on the same factual allegations as his breach of contract claim: Gordon's diversion of Fusion's assets to Fusion BK after Fusion's dissolution. (*See* Compl. ¶ 80 (alleging that Gordon "committed theft and self-dealing" by "transferring Fusion's assets to Fusion BK"); Pl.'s SJ Opp'n at 22–23 (basing breach of fiduciary duty claim on "Gordon's use of Fusion's service marks, goodwill and brand for her own company after dissolution")). Pollack contends that the claim arises "not out of the contract, but rather out of the special relationship between the person directed to liquidate the assets at fair value in ninety days . . . and the other members of the LLC." (Pl.'s SJ Opp'n at 23). But he does not set forth any additional conduct by Gordon that breaches her fiduciary duties separate and apart from the conduct that he contends breaches her contractual obligation to liquidate Fusion's assets consistent with the Operating Agreement. Nor does he set forth any additional injury

or damages.[7]  Because Pollack is "essentially seeking enforcement of the bargain, the action should proceed under a contract theory," *IKB Int'l, S.A.*, 40 N.Y.3d at 290 (quotation omitted), and his breach of fiduciary duty claim is duplicative, warranting dismissal, *see, e.g.*, *Hous. & Redevelopment Ins. Exch. v. Guy Carpenter & Co.*, No. 24-CV-2412, 2026 WL 572941, at *6 (S.D.N.Y. Feb. 28, 2026) ("Plaintiff's allegations relating to the breach of fiduciary duty claim are identical to the breach of contract claim with respect to 'the nature of the injury, how the injury occurred, and the harm it caused[,]' rendering the fiduciary duty claim duplicative." (quoting *IKB Int'l, S.A.*, 40 N.Y.3d at 291)); *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 679 (S.D.N.Y. 2022) ("Even assuming Plaintiff has alleged sufficient facts to plead the existence of a fiduciary duty between Defendants and Plaintiff by virtue of Defendants' roles as limited partners, Plaintiff's claim for breach of that duty is 'based upon the same facts and theories as [its] breach of contract claim.'" (quoting *Brooks v. Key Tr. Co. Nat'l Ass'n*, 26 A.D.3d 628, 630 (3d Dep't 2006))); *Jacobs v. del la Maza*, No. 20-CV-3320, 2023 WL 5680180, at *7 (E.D.N.Y. Aug. 18, 2023) (dismissing Plaintiff's breach of fiduciary duty claim seeking damages for LLC members' usurpation of business opportunities as duplicative of breach of contract claim predicated on the same facts), *report and recommendation adopted*, 2023 WL 5806221 (Sep. 7, 2023).  Accordingly, the motion for summary judgment on the breach of fiduciary duty claim is granted.

---

[7] Although Pollack vaguely asserts that he suffered "economic and non-economic damages" in his Complaint, (Compl. ¶ 81), he does not set forth any detail about any non-economic damages in his Rule 56.1 Statement.  Rather, he focuses solely on the value of Fusion's intangible assets that should have been liquidated upon dissolution—the same basis for his alleged contract damages.

### D. Inducement of Breach of Fiduciary Duty

Because the Court has dismissed Pollack's breach of fiduciary duty claim against Gordon as duplicative, Pollack's aiding and abetting breach of fiduciary claim against Fusion BK is also dismissed. *See, e.g.*, *Kassover v. Prism Venture Partners, LLC*, 53 A.D.3d 444, 449 (1st Dep't 2008) ("The cause of action for breach of fiduciary duty against Gibson duplicates the breach of contract claim against her. Therefore, it was proper for the court to have dismissed it. Because the breach of fiduciary duty claim fails, there can be no cause of action for aiding and abetting breach of that fiduciary duty."); *Oliver Wyman, Inc. v. Eielson*, No. 15-CV-5305, 2016 WL 5339549, at *10 (S.D.N.Y. Sep. 22, 2016) ("It inexorably follows that where a breach of fiduciary duty claim fails because it is duplicative of a breach of contract claim, there can be no cause of action for aiding and abetting breach of that fiduciary duty." (quotation omitted)); *Uni-World Cap., L.P. v. Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236, 245 (S.D.N.Y. 2014) ("[P]laintiffs' claim for aiding and abetting breach of fiduciary duty (Count 12) must also be dismissed, because, under New York law, [a] claim for aiding and abetting a breach of fiduciary duty requires . . . a breach by a fiduciary of obligations to another. Plaintiffs here have not alleged any such breach that is independent of the alleged breach of contract." (quotation omitted)).

### E. Violation of NYLLCL § 1102(b) and Fusion's Operating Agreement

NYLLCL § 1102(b) provides LLC members the right to inspect the LLC's books and records:

> [a]ny member may, subject to reasonable standards as may be set forth in, or pursuant to, the operating agreement, inspect and copy at his or her own

expense, for any purpose reasonably related to the member's interest as a member, the records referred to in subdivision (a) of this section, any financial statements maintained by the limited liability company for the three most recent fiscal years and other information regarding the affairs of the limited liability company as is just and reasonable.

NYLLCL § 1102(b). Similarly, under Fusion's Operating Agreement:

Each Member has the right, on reasonable request, subject to such Member's agreement to maintain confidentiality thereof, to:

6.2.1 Inspect during normal business hours, for any purpose reasonably associated with such Member's Units, any of the Company records required to be maintained . . . and such other information regarding the affairs of the Company as is just and reasonable; and

6.2.2 Obtain from the Company, promptly after they are available, a copy of the Company's federal, state, and local income tax or information returns for each year.

(Operating Agreement § 6.2).

Defendants contend that Pollack's books and records claims should be dismissed because Fusion's financial records—including tax returns and K-1s—were all produced in discovery. (Defs.' SJ Mot. at 11). The Court agrees. Pollack asserts in conclusory fashion that Gordon's document production is "not complete," (Pl.'s SJ Opp'n at 23; Pl.'s 56.1 Stmt. ¶¶ 8–9; Decl. of Kevin Pollack ("Pollack Decl."), attached to Lehman SJ Decl. as Ex. 2, Dkt. No. 73-2 ¶¶ 13–14), but he has not identified any specific records of Fusion he requested that were not produced to him in discovery and should have been pursuant to NYLLCL or the Operating Agreement. Pollack's conclusory assertion that "[c]ertain federal, state, and city tax filings were not provided to [him] despite requests," (Pollack Decl. ¶ 14), is insufficient to survive summary judgment.

Separately, although Pollack argues that "[t]he belated production of 15,000 pages during litigation does not retroactively cure a statutory violation," (Pl.'s SJ Opp'n at 23), and seeks damages on these claims in his Complaint, (Compl. ¶ 99), he cites no cases awarding damages for a violation of NYLLCL § 1102(b). The remedy for a violation of NYLLCL § 1002(b) is inspection of the records—not damages. *Cf.* 2 White, New York Business Entities ¶ B624.04[3] (2026) (explaining that under New York Business Corporations Law § 624, New York's broader books and records statute for corporations, financial penalties were eliminated in favor of "authoriz[ing] the person making the demand for inspection to apply to the Supreme Court in the judicial district where the office of the corporation is located for an order compelling such inspection"). He has cited no authority under which he could obtain damages. This claim is, therefore, dismissed.

## F.      Demand for Equitable Accounting

Under New York law, the elements of an equitable accounting claim "include a fiduciary or confidential relationship, money entrusted to the [defendant] imposing the burden of an accounting, the absence of a legal remedy, and in some cases a demand and refusal." *Ardalan v. Safaie*, 239 A.D.3d 1433, 1434–35 (4th Dep't 2025) (quotation omitted)); *see also Fuller Landau Advisory Servs. Inc. v. Gerber Fin. Inc.*, 333 F. Supp. 3d 307, 315 (S.D.N.Y. 2018) ("Under New York law, there are four elements to a claim for equitable accounting: (1) a fiduciary relationship (2) entrustment of money or property (3) no other remedy and (4) a demand and refusal of an accounting." (quotation omitted)).

Gordon contends that this claim should be dismissed as moot because Pollack obtained access to financial records in discovery. (Defs.' SJ Mot. at 11). But "[c]ourts applying New York law have repeatedly observed that a claim for an accounting is not mooted by the production of financial documents." *Sound Around, Inc. v. Friedman*, No. 24-CV-0986, 2026 WL 972984, at *17 (S.D.N.Y. Apr. 10, 2026) (citing *Soley v. Wasserman*, No. 08-CV-9262, 2013 WL 526732, at *6 (S.D.N.Y. Feb. 13, 2013) (collecting cases)), *appeal docketed,* No. 26-1301 (2d Cir. May 11, 2026). Pollack has demonstrated a fiduciary relationship between him and Gordon—as a managing member of Fusion, Gordon stood in a fiduciary relationship with Fusion's other members, including Pollack. *See supra* p. 19; *see also Cordts-Auth v. Crunk, LLC*, 815 F. Supp. 2d 778, 800 (S.D.N.Y. 2011) ("LLC members share a fiduciary relationship."), *aff'd*, 479 F. App'x 375 (2d Cir. 2012).

Gordon also contends that Pollack has failed to show the absence of an adequate remedy of law—which is necessary before an equitable accounting can be ordered. *See Soley v. Wasserman*, 639 F. App'x 670, 674 (2d Cir. 2016). That argument is premature. Pollack has yet to obtain any remedy at law. Should he prevail on any of his claims at law, he will not be entitled to an equitable accounting. However, should his claims at law fail, he may seek an equitable accounting. Accordingly, the motion for summary judgment on this claim is denied.

### G.    Damages & Attorney's Fees

Defendants separately argue that Pollack's claims should be dismissed because he has not established any damages, and he is not entitled to attorney's fees. (Defs.' SJ Mot. at 1, 12). These arguments are meritless. Defendants set forth no facts evidencing

a lack of damages.  Pollack has set forth ample evidence of damages—the undisputed evidence indicates that Gordon diverted many of Fusion's assets to her new LLC rather than liquidating them to the members.  (*See* Pl.'s 56.1 Counter-Statement ¶¶ 27–34, 46; Pollack Decl. ¶¶ 32–42).  And based in part on these assets, Pollack's expert estimates the value of Fusion to range between $ 3.4 million and $ 5.4 million.  (Vu Report at 6).  Even setting Pollack's expert report aside, Gordon's diversion of Fusion's assets—and failure to liquidate them in accordance with the Operating Agreement—necessarily resulted in monetary damages to Pollack.  Indeed, Defendants do not even attempt to argue that these assets had no value.

As for attorney's fees, Defendants argue that Pollack is not entitled to attorney's fees because he will not prevail.  (Defs.' SJ Mot. at 12).  Because neither party has prevailed yet, the Court declines to dismiss any claim for attorney's fees.

CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is granted in part and denied in part, and Defendants' motion to exclude Pollack's expert is denied.  The parties are directed to submit a joint proposed pretrial order by **September 14, 2026**, consistent with the undersigned's Individual Practices.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  August 13, 2026
       Central Islip, New York